UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


DALLAS BUYERS, LLC,                                    Civ. No. 3:15-cv-00907-AC

        Plaintiff,                                    AMENDED FINDINGS AND
                                       RECOMMENDATION

           v.


INTEGRITY COMPUTER SERVICES,

        Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

      Plaintiff Dallas Buyers Club, LLC, ("Dallas") moves to allow the filing of a Second

Amended Complaint pursuant to FED. R. CIV. P. 15(a)(2) and 25(c). Dallas seeks to remove

Integrity Computer Services ("Integrity") as the defendant and substitute John Huszar ("Huszar")

in its stead. Dallas also seeks to add facts alleging Huszar irretrievably deleted content on the

only virtual machine ("VM") that had access to the Internet Protocol ("IP") address observed

infringing Dallas's copyright. Dallas contends the deletion of this evidence shows spoliation.

Integrity opposes Dallas's motion in its entirety.  The court finds Dallas's motion to amend should granted in part and denied in part.

*Background*

On May 27, 2015, Dallas, which is the registered copyright holder of the Academy Award–winning film *Dallas Buyers Club*, filed a complaint against a Doe defendant identified only by the defendant's IP address.  (Compl. (ECF No. 1.) ¶¶ 5-6, 11.)  Dallas alleged its motion picture was pirated using the aforementioned IP address on May 9, 2014.  (Compl. ¶ 11.)  On May 27, 2015, Dallas filed a motion to expedite discovery, asking the court to allow it to subpoena the Doe defendant's Internet Service Provider, Comcast, for information identifying the subscriber of the IP address.  (Mot. to Expedite Disc.  (ECF No. 3.), at 2.)  This court granted Dallas's motion.  (Order Granting Mot. to Expedite Disc.  (ECF No. 6.).)  Comcast complied with the subpoena, and Dallas identified Integrity as the IP address subscriber.  (First Am. Compl. (ECF No. 10.) ¶¶ 18-19.)

After identifying Integrity as the IP address subscriber, Dallas maintains it repeatedly attempted to communicate with Integrity through Huszar, Integrity's registered agent.  (Mem. in Supp. of Mot. for Leave to File Am. Compl. ("Mem.") (ECF No. 37.), at 2-3.)  Huszar, however, "refused to respond to letters and could not be served with a subpoena."  (Mem., at 2.) Consequently, Dallas named Integrity as the defendant in its First Amended Complaint and did so "to allow discovery to continue."  (Mem., at 3.)  Dallas's First Amended Complaint asserted claims against Integrity for direct copyright infringement, indirect copyright infringement, and failure to register an assumed business name.  (First Am. Compl. ¶¶ 23-49.)

In response to the First Amended Complaint, Huszar, "under his own name," asserted "that Integrity [] was not the proper defendant, was dissolved in 2011," and Huszar had begun

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

operating the same business under the assumed business name Designer Visuals. (Mem., at 3; Addt'l Statements & Supporting Doc. to Integrity's Mot. to Dismiss ("Addt'l Statements") (ECF. No. 27.), at 2.) Huszar also claimed the Comcast Business Account that subscribed to the relevant IP address was paid for and currently registered under the assumed business name Designer Visuals. (Addt'l Statements, at 3.) Based on these assertions, Dallas believes Huszar is the proper defendant in this action. (Mem., at 3.)

Huszar states he never infringed Dallas's copyright and "had never even heard of the movie 'Dallas Buyers Club' until this lawsuit was filed, and after looking up the movie . . . had no desire to see this movie." (First Huszar Decl., Feb. 4, 2016 ¶ 3 (ECF No. 39.); Second Huszar Decl., Mar. 14, 2016 ¶ 23 (ECF No. 40.).) Huszar further states he did not use the relevant IP for business or personal use but instead dedicated it to a Tor VM. (First Huszar Decl. ¶¶ 8-9.) A VM is a self-contained operating system that acts as if it is a wholly separate computer. (Second Huszar Decl. ¶ 5.) The only individuals who had access to or used the IP address, Huszar explains, were "anonymous individuals" who used the Tor VM "as an exit relay." (First Huszar Decl. ¶ 8.) Huszar believes the infringer was some anonymous and unidentifiable user of his Tor VM. (First Huszar Decl. ¶ 11.)

The Tor VM was apparently contained on a server that also stored multiple business-related VMs; however, the Tor VM operated entirely independently and was the only VM with access to the IP address at issue in this case. (Second Huszar Decl. ¶ 17; First Huszar Decl. ¶ 8; Huszar Dep. 47:24-48:2.) On August 18, 2015, the server containing the Tor and business-related VMs failed. (Second Huszar Decl. ¶ 14.) Because the business-related VMs were highly important to Huszar's business, and because Huszar has limited experience "in diagnosing low-

level hardware problems," he called a technician who managed to restore the server.  (Second Huszar Decl. ¶¶ 15, 17.)

After restoration, the server "function[ed] normally for a few months" but failed a second time in December 2015.  (Second Huszar Decl. ¶ 16.)  This time, Huszar was successful in restoring the server himself.  (Second Huszar Decl. ¶ 16.)  Nonetheless, he states he "became much more concerned about the state of the hardware in [the] machine," as "this was the second occurrence of a major problem."  (Second Huszar Decl. ¶ 16.)  Accordingly, Huszar "migrated" his business-related VMs to a second server.  (Second Huszar Decl. ¶ 16.)  Huszar did not migrate the Tor VM; he stated the Tor VM "was a much lower priority VM than the other business-related VMs."  (Second Huszar Decl. ¶ 17.)

In January 2016, Huszar returned to work from "the year-end holidays" and began working on the twice-failed server in an attempt to sufficiently restore it to a state in which it could be used for "business purposes."  (Second Huszar Decl ¶ 18.)  However, the tools contained within the server's firmware that "could assist in repairing the server [were] very limited," and, according to Huszar, the only tool he could find caused the server's remaining data to be overwritten.  (Second Huszar Decl. ¶ 18.)  Due to the overwrite, the Tor VM was entirely lost, as it had not been migrated.  (Huszar Dep. 47:24-48:2.)

Despite being the only VM with access to the IP address at issue, Huszar states the Tor VM was not pertinent to this case because it did not record, in log files, the events that occurred or the messages exchanged between different Tor VM users.  (Second Huszar Decl. ¶¶ 8-9.) Without log files, Huszar contends, he would have been incapable of knowing or identifying the Tor users who may have infringed Dallas's copyright even if the Tor VM had been salvaged. (Second Huszar Decl. ¶¶ 8, 11.)  Moreover, all data transmitted via the Tor network is encrypted,

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

making it impossible to have identified the infringer at the time it occurred. (Second Huszar Decl. ¶ 9.) Finally, Huszar points out, all other data that formerly resided on the failed server is preserved and available for inspection. (Second Huszar Decl. ¶ 22.)

As stated, at the time Dallas filed its First Amended Complaint, it was unaware Integrity was no longer a going concern. (Mem., at 2-3.) Dallas was also unaware Huszar had "irretrievably deleted" "the only [VM] that had access to" the IP address associated with the infringing activity. (Mot. for Leave to File Am. Compl. ("Mot.") (ECF No. 37.), at 2; Huszar Dep. 48:13-16.) In fact, it was Huszar who voluntarily brought these facts to Dallas's attention. (Addt'l Statements, at 2; Second Huszar Decl. ¶ 19.) Before Dallas could amend its First Amended Complaint to reflect these factual developments, however, Integrity moved to dismiss all three of Dallas's claims. (Mot. to Dismiss (ECF No. 15.).) This court denied Integrity's Motion to Dismiss with leave to refile after Dallas files an amended complaint. (ECF No. 30.)

Dallas now moves to amend its First Amended Complaint to reflect these newly discovered facts. Dallas's Proposed Second Amended Complaint ("Proposed Complaint") substitutes Huszar for Integrity as the defendant but retains its original three claims for direct copyright infringement, indirect copyright infringement, and failure to register. (Mot. Ex. 1 ¶¶ 23-48.) The Proposed Complaint would also add facts alleging Huszar irretrievably deleted content on the only VM that had access to the IP address observed infringing Dallas's copyright. (Mot. Ex. 1 ¶¶ 21-22.) Dallas contends the deletion of the VM evidences willful spoliation. (Mot., at 2.)

Integrity opposes the motion and argues substituting Huszar as the defendant "would be futile, and given the attendant anxiety, distress and potential cost, would be prejudicial to [] Huszar." (Resp. in Opp. to Mot. for Leave ("Resp.") (ECF No. 39.), at 6.) In addition, Integrity

argues Dallas's proposed factual allegations are prejudicial, made in bad faith, and that any claim of spoliation is futile.  (Resp., at 6, 10.)

*Legal Standard*

I. FED. R. CIV. P. 15(a)

After the initial pleading stage, a plaintiff may amend his "pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a) (2015).  "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655 F.2d 977, 979 (1981) (citing *Rosenberg Brothers & Co. v. Arnold*, 283 F.2d 406 (9th Cir. 1960) (per curiam)). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  "Four factors are commonly used to determine the propriety of a motion for leave to amend.  These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Id.* Prejudice to the opposing party carries the "greatest weight" in determining whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Whether to grant leave ultimately rests within the sound discretion of the trial court. *Webb*, 655 F.2d at 979.  In exercising this discretion, however, the court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.*

II. FED. R. CIV. P. 25(c)

FED. R. CIV. P. 25(c) allows a court to substitute a previously unnamed party that succeeds to the interest of a named party. *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 70 (3rd Cir. 1993).  "'Rule 25 is not designed to create new relationships among parties

to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands.'" *Swalley Irrigation Dist. v. Alvis*, Civ. No. 04-1721-AA, 2007 WL 927939, at *3 (D. Or. Mar. 23, 2007) (quoting *Collateral Control Corp. v. Deal*, 638 F.2d 1362, 1364 (5th Cir. 1981). "[T]he power to order a substitution" when a transfer of interest occurs "is a matter of discretion." *McComb v. Row River Lumber Co.*, 177 F.2d 129, 130 (9th Cir. 1949).

*Discussion*

I. Dallas's First Proposed Amendment – Addition of Facts Alleging Spoliation

In the Proposed Complaint, Dallas adds facts alleging Huszar "willfully and intentionally deleted the contents of the single computer that had access to" the IP address observed infringing Dallas's copyright and did so after notice of ongoing litigation and while he was cognizant of the evidence's relevancy to the litigation.  (Mot. Ex. 1 ¶ 21.)  Dallas contends these facts show spoliation of evidence.  Consequently, Dallas seeks leave to amend to add these facts to its complaint.  Integrity objects, arguing the addition of these facts are prejudicial, made in bad faith, and that any claim of spoliation is futile.  Integrity does not contend Dallas's delay in seeking this amendment is undue, and there is nothing in the record suggesting Dallas unduly delayed in seeking this amendment.  The court will thus address Integrity's assertions of prejudice, bad faith, and futility to determine whether leave to amend to add the alleged facts relating spoliation of evidence should be granted.

*A.  Prejudice*

Integrity maintains adding facts asserting Huszar deleted evidence after notice of ongoing litigation would be prejudicial because it would cause unnecessary stress, anxiety, and prove costly.  The court finds that no prejudice would occur, as litigation is still in its early stages.

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

A motion to amend can be prejudicial if it would require the court to reopen discovery and delay proceedings. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). Moreover, a movant who seeks to introduce a new legal theory when the parties are well into the litigation unduly prejudices the other side. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Undue prejudice also exists when a plaintiff files a motion to amend after the parties have "participated in substantial discovery." *Hitt v. Ariz. Beverage Co., LLC*, No. 08-cv-809-WQH-POR, 2009 WL 4261192, at *6 (S.D. Cal. Nov. 24, 2009). By contrast, a motion to amend is not prejudicial when discovery has not closed, there is no pending trial date, and the case as a whole remains in its early stages. *DCD Programs*, 833 F.2d at 187-88.

Discovery in this case is in the beginning stages; thus, there is no need to reopen discovery, and the proceedings would not be delayed because of Dallas's proposed amendment. Furthermore, while Dallas asserts a new legal theory – spoliation of evidence – it has done so early in the litigation process; indeed, no trial date or pretrial conference has even been scheduled. Accordingly, there is no evidence prejudice will result if Dallas is permitted to amend its complaint to add facts it contends show spoliation of evidence.

### B. Bad Faith

Integrity asserts Dallas's attempt to add facts alleging Huszar destroyed relevant evidence is done so in bad faith, is attenuated, and is "based on . . . [a] strained interpretation of what may possibly be discoverable 'evidence.'" (Resp., at 3.) Bad faith in filing a motion for leave to amend exists when the addition of new legal theories are baseless and presented for the purpose of prolonging litigation, *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 881 (9th Cir. 1999), or

when the adverse party offers evidence that shows "wrongful motive" on the part of the moving party. *DCD Programs Ltd.*, 833 F.2d at 187.

There is no evidence in the record indicating Dallas brought its motion to amend in bad faith. Given the limited discovery that has taken place, there is no evidence, and Integrity has provided none, that Dallas knew or should have known Huszar irretrievably deleted relevant evidence at the time it filed its First Amended Complaint. Furthermore, because this case is still in its early stages, there is nothing suggesting the addition of these facts would measurably prolong litigation. Integrity counters, however, that any evidence destroyed was irrelevant anyway because the deleted Tor VM did not record the events that occurred or the messages exchanged between different Tor VM users. Additionally, Integrity argues, Dallas's attempt to argue spoliation is cynical and merely an attempt to "shift the burden of proof from [Dallas] to [] Huszar." (Resp., at 3.)

First, the evidence is relevant. The deleted Tor VM was the only VM that had access to the IP address associated with the infringing activity at issue. Second, as will be discussed in greater detail below, far from being baseless, these factual allegations, taken as true, permit the reasonable inference that Huszar spoliated evidence. Integrity is correct that spoliation of evidence raises a presumption, which the spoliating party must rebut, that the destroyed evidence is relevant and adverse to the party that destroyed it. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012). Merely because Dallas's alleged facts plausibly raise an inference of spoliation that may shift the burden to Huszar, however, does not indicate Dallas acted with a wrongful motive or is asserting baseless claims. There is thus no evidence Dallas has acted in bad faith. Accordingly, the court finds Dallas's proposed amendment, which adds facts alleging spoliation of evidence, is not sought in bad faith.

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

C. *Futility*

As stated, Dallas alleges Huszar deleted all relevant content on the only server using the infringing IP address, and did so in January 2016, well after he was notified of this lawsuit. Integrity argues the addition of these facts would be futile in aiding Dallas because Dallas's proposed factual allegations do not show spoliation of evidence.  Specifically, Integrity argues there is no evidence of intentional spoliation because: (1) Huszar did not receive any letter from Dallas notifying him he had an obligation to preserve evidence; (2) the data loss occurred as a result of a good-faith effort by Huszar "to restore a failed physical server to use for business purposes"; (3) other than the contents of his Tor VM, all data "that previously resided on the failed physical server is still preserved and available for copying and inspection"; (4) the Tor VM was not the only machine with access to the relevant IP address because an unknown number of other computers used Huszar's IP address as an exit relay; and (5) the only evidence lost was the Tor VM, and the Tor VM did not record the events that occurred or the messages exchanged between different Tor VM users, and, without any records of events or messages that took place on or through the Tor VM, the Tor VM contained no relevant data to begin with, negating any responsibility Huszar had to preserve the Tor VM as potential evidence.  (Resp., at 9-10.)

A claim is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *see also Fulton v. Advantage Sales & Mktg., LLC*, No. 3:11-cv-01050-MO, 2012 WL 5182805 (D. Or. Oct. 18, 2012) (applying the *Iqbal* and *Twombly* "plausibility" standard to the court's futility analysis).  The court thus considers whether Dallas's factual allegations raise a reasonable inference of spoliation.  *See Ashcroft v. Iqbal*, 556 U.S.

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

662, 678 (2009) (stating that, in order to state claim for relief, a plaintiff's factual allegations must enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged").

"'The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences.'" *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003)). "[T]he obligation to preserve evidence arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991). A party's failure to preserve evidence constitutes "willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)) (italics in original).

"A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions" for spoliation if the court finds the party had notice the destroyed evidence might be relevant to the litigation. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006). "However, destruction of documents which would have been relevant in later litigation is not wrongful unless that litigation was reasonably foreseeable at the time of destruction." *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 975 (N.D. Cal. 2012). The "obligation to preserve relevant evidence exists whether or not the evidence has been specifically requested in a demand for discovery." *Scalera v. Electrograph Systems, Inc.*, 262 F.R.D. 162, 171 (E.D.N.Y. 2009). "In the Ninth Circuit, spoliation of evidence raises a

presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc.*, 888 F. Supp. at 993.

Huszar was aware of the current litigation and should have known the Tor VM might be relevant. The destruction of the Tor VM occurred sometime after January 1, 2016, well after Dallas filed its First Amended Complaint and Huszar was made aware of the lawsuit. Indeed, neither Integrity nor Huszar dispute Huszar's awareness of the ongoing litigation. Instead, Integrity argues Huszar did not receive notification from Dallas informing him he had an obligation to preserve evidence. However, a party who anticipates evidence might potentially be relevant to the litigation has an obligation to preserve the evidence whether or not the opposing party has provided notification informing the party preservation is necessary. *See Apple Inc. v. Samsung*, 881 F. Supp. 2d 1132, 1136-37 (N.D. Cal. 2012) (stating that a litigant or future litigant need not request that the adverse party preserve evidence and a failure to do does not vitiate the adverse party's responsibility to preserve such evidence so long as the adverse party knows or should know of potential litigation). As stated, Huszar should have known the Tor VM, the only VM with connection to the IP address at issue in this case, was clearly relevant to the litigation. Hence, Huszar had a duty to preserve the Tor VM, irrespective of whether or not Dallas specifically informed him of an obligation to preserve.

Moreover, Integrity's assertion that the data loss allegedly resulted from a good-faith effort by Huszar to restore a failed physical server is immaterial. Dallas need only show the evidence would have been favorable, not that Huszar acted in bad faith. *See Scalera*, 262 F.R.D. at 178 (stating that a party who seeks an adverse inference from the destruction of evidence needs to show the evidence would have been favorable to it or the spoliator had a culpable state of mind (citing *Chan v. Triple 8 Palace, Inc.*, No. 03-CIV-6048-GEL-JCF, 2005 WL 1925579,

at *8 (S.D.N.Y. August 11, 2005)).  Dallas has shown the evidence would have been favorable. The deleted Tor VM amounted to the only machine of any kind that connected to the relevant IP address used to pirate *Dallas Buyers Club*. Consequently the Tor VM was central to the issue in this case because the infringing activity had to have been related in some way to the Tor VM.

Additionally, simply because Huszar preserved all other data previously residing on the failed server does not negate Dallas's allegation that Huszar deleted evidence potentially relevant to the ongoing litigation.  Furthermore, all other data Huszar did manage to salvage related to the business-related VMs.  Huszar acknowledges the business-related VMs did not have access to the relevant IP address.  Hence, Huszar irretrievably deleted all content related to the IP address identified with infringing activity.  Huszar's obligation to preserve relevant evidence is not vitiated because he backed up unrelated content.

Similarly, merely because other computers evidently used the IP address as an exit relay does not negate Dallas's assertion that Huszar permanently deleted potentially relevant evidence. First, Huszar does not describe what it means to use an IP address as an exit relay; however, Huszar did unequivocally testify that he deleted "the only [VM] that had access to the" relevant IP address.  (Huszar Dep. 48:13-16.)  Second, it was only through the Tor VM that other computers were able to use the IP address as an exit relay.  Thus, regardless of whether or not other computers truly accessed the relevant IP address, a court could certainly infer that the Tor VM was potentially relevant to the litigation, necessitating preservation.

Finally, Integrity's argument that there was no evidence that could have been preserved because the Tor VM did not record the events that occurred or the messages exchanged between different Tor VM users does not show futility.  At the motion to dismiss phase, a court need only draw a reasonable inference that the defendant is liable for the misconduct alleged and should

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

dismiss a claim "only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted." *Numrich v. Oregon*, No. 3:15-CV-00183-JE, 2015 WL 5130462, at *2 (D. Or. Aug. 31, 2015). In addition, the court must construe the allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Here, a reasonable inference can certainly be drawn that the Tor VM was potentially relevant to the litigation. As discussed, the Tor VM was the only VM that had access to the relevant IP address. While it may be true that the Tor VM did not record the events that occurred and messages that were exchanged between different users, the evidence mentioned above, taken in the light most favorable to Dallas, sufficiently raises the inference that Huszar destroyed potentially relevant evidence while on notice that it might be germane to ongoing litigation. Consequently, Dallas's factual allegations permit a reasonable inference that Huszar failed to preserve evidence despite an obligation to do so. Because Dallas's factual allegations enable the court to reasonably draw this inference, the court finds a claim for spoliation would not be futile.

*D. Conclusion*

Based on the preceding analysis, Dallas's first proposed amendment to its complaint, which would add facts alleging Huszar irretrievably deleted relevant evidence, meets the liberal requirements of FED. R. CIV. P. 15(a). Accordingly, Dallas's motion for leave to file an amended complaint should be granted with respect to this proposed amendment.

II. Dallas's Second Proposed Amendment – Substitution of Huszar as the Defendant

Dallas seeks to remove Integrity and substitute Huszar as the defendant in this matter. Dallas argues that after it identified Integrity as the IP address subscriber, it repeatedly attempted to communicate with Integrity through Huszar, Integrity's registered agent, to no avail. Dallas

therefore named Integrity as the defendant in its First Amended Complaint "to allow discovery to continue." (Mem., at 3.)  In response to Dallas's First Amended Complaint, Huszar asserted Integrity was the incorrect defendant, as it had been administratively dissolved. Dallas thus argues the court should substitute Huszar as the true defendant pursuant to FED. R. CIV. P. 25(c) or FED. R. CIV. P. 15(a).  Integrity objects to Dallas's motion.

First, FED. R. CIV. P. 25(c) is inapplicable.  FED. R. CIV. P. 25(c) "applies if the transfer occurs during the pendency of the action," not if the "interest was transferred prior to the commencement of the suit." *Hilbrands v. Far East Trading Co.*, 509 F.2d 1321, 1323 (9th Cir. 1975); *see also Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1407 (11th Cir. 1998) (stating FED. R. CIV. P. 25(c) "applies only to transfers of interest occurring during the pendency of litigation and not to those occurring before the litigation begins").  Integrity was dissolved and all assets of the company apparently were transferred to Huszar in 2011, four years prior to commencement of this action.  FED. R. CIV. P. 25(c) is thus clearly inapplicable to the matter at hand.

Because FED. R. CIV. P. 25(c) does not apply, the court assesses whether Dallas should be granted leave to amend to substitute Huszar for Integrity pursuant to FED. R. CIV. P. 15(a). Integrity argues Dallas should be denied leave because the attendant anxiety, stress, and potential cost of naming Huszar as the defendant would be prejudicial and that allowing the proposed amendment would be futile, as Dallas fails to sufficiently allege Huszar is liable for any of the three claims it brings.  Integrity does not argue, however, that Dallas unduly delayed in seeking this amendment, nor does it argue Dallas acted in bad faith, and there is nothing in the record suggesting otherwise.  Consequently, the court will address Integrity's assertions of prejudice and futility to determine whether leave to amend should be granted.

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

A.  *Prejudice*

The court finds Huszar will not be prejudiced.  When a suit is in its early stages, an argument that a defendant would be prejudiced simply because they will be added to ongoing litigation is insufficient.  *DCD Programs Ltd.*, 833 F.2d at 187-88.  In *DCD Programs*, the appellants sought to amend their complaint to add the appellee.  *Id.* at 184.  The appellants filed their original complaint over a year before moving to amend their complaint to add the appellee.  *Id.* at 185.  The appellee therefore argued adding it as a defendant to the suit would be prejudicial because, with litigation already ongoing, the appellants had unjustly delayed in seeking to amend.  *Id.* at 187.  In holding the appellants could amend their complaint, the Ninth Circuit explained that there was "clearly no basis for any claim of prejudice," as the case was "still at the discovery stage with no trial date pending, nor ha[d] a pretrial conference been scheduled."  *Id.* at 188.  Thus, the court stated, there was simply "no evidence that [the appellee] would be prejudiced by the timing of the proposed amendment."  *Id.*

Because litigation is in the early stages, Huszar will not be prejudiced if substituted as the defendant.  In this case, as in *DCD Programs*, discovery is in the beginning stages, no trial date is pending, nor has one been scheduled, and no pretrial conference has been scheduled.  Thus, there is simply no evidence Huszar will be prejudiced by Dallas's proposed amendment.  Furthermore, the record indicates all responsibilities of Integrity passed to Huszar after he dissolved the enterprise, including assumption of control of the Comcast Business Account associated with the IP address at issue in this case.  Accordingly, it appears as if Huszar's interests are similar, if not identical, to Integrity's and have been adequately represented thus far.  Integrity has not offered any evidence to the contrary.  Finally, Huszar personally appeared in this case at a December 2015 hearing, and he has been aware of and involve in the lawsuit since

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

at least that time.  The court therefore finds Huszar will not be prejudiced if substituted as the defendant.

B.  *Futility*

In the Proposed Complaint, Dallas alleges Huszar is liable for direct copyright infringement, indirect copyright infringement, and failure to register an assumed business name with the Oregon Secretary of State.  Integrity argues Dallas fails to state a claim for relief as to all three of these claims, rendering them futile.  The court will address each claim individually.

i.    Direct Copyright Infringement

The Proposed Complaint alleges Huszar, without Dallas's permission or consent, "copied and distributed [Dallas's] motion picture through a public BitTorrent network."  (Mot. Ex. 1 ¶ 23.)  Integrity asserts Dallas's claim of direct copyright infringement against Huszar is futile because Huszar "has stated under oath that he *did not* copy 'Dallas Buyers Club'" and Dallas lacks the evidence necessary to identify the actual infringer.  (Reply, at 6-7) (italics in original).

Because a claim is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense," *Rykoff-Sexton, Inc.*, 845 F.2d at 214, the court must assess whether Dallas's allegation states a claim for direct copyright infringement.  To show direct copyright infringement, the plaintiff "must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act."  *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  In order to show the defendant himself violated the plaintiff's exclusive rights and not someone else, the plaintiff must provide more than the mere fact that the IP address associated with the infringing activity is registered to the plaintiff.  *See, e.g.*, *AF Holdings LLC v. Rogers*, No. 12-cv-1519-BTM-BLM, 2013 WL 358292, at *2 (S.D. Cal. Jan. 29, 2013).  "[J]ust because

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

an IP address is registered to an individual does not mean that he or she is guilty of infringement when that IP address is used to commit infringing activity." *Id.* In fact, the increased popularity of wireless routers makes it "even more doubtful that the identity of the subscriber to an IP address correlates to the identity of the infringer who used the address . . . 'different family members, or even visitors, could have performed the alleged downloads." *Id.* (citing *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y 2012)). Thus, a plaintiff must provide more than "an allegation that an IP address is registered to an individual." *Id.* at *3. By itself, such an allegation "is not sufficient . . . to support a claim that the individual is guilty of infringement." *Id.*

There is no dispute Dallas owns the copyright at issue in this case. The only dispute is whether Huszar violated Dallas's exclusive rights. Integrity points the court to Huszar's declaration, in which he states he "did not personally use BitTorrent software to download and/or upload 'Dallas Buyers Club'" and, moreover, "had never even heard of the movie 'Dallas Buyers Club' until this lawsuit was filed, and after looking up the movie . . . had no desire to see this movie." (First Huszar Decl. ¶ 3; Second Huszar Decl ¶ 23.) Integrity also argues Dallas's only evidence of direct copyright infringement is evidence showing Huszar maintains the Comcast Business Account associated with the IP address at issue in this case. Integrity states simply because the relevant IP address is registered to the Comcast Business Account Huszar subscribes to does not mean Huszar is guilty of infringement.

While Integrity is correct that an allegation an IP address is registered to an individual is, alone, insufficient to support a claim that the Internet subscriber is guilty of infringement, Dallas has pointed to additional evidence to support its claim that Huszar directly infringed its copyright. Specifically, Dallas seeks to add allegations that Huszar admitted to "irretrievably

AMENDED FINDINGS AND RECOMMENDATION
{TJK}

delet[ing] all relevant content on" the only server using the infringing IP address and did so in January 2016, well after he was notified of this lawsuit.   (Huszar Dep. 48:13-16.) Dallas maintains the destruction of this evidence raises a presumption the evidence was adverse to Huszar and relates to the merits of the claim for direct copyright infringement.

This negative inference provides the court with enough factual matter to reasonably infer Huszar directly infringed its copyright and thereafter knowingly and willfully destroyed evidence of any infringing activity.   As stated, at the motion to dismiss phase, a court need only draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Numrich*, 2015 WL 5130462, at *2.   Furthermore, a court should only dismiss a claim "if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted."  *Id.*   And the court must construe the allegations in the light most favorable to the non-moving party.  *Parks Sch. of Bus.*, 51 F.3d at 1484.

When construing all allegations in Dallas's favor, a reasonable inference can be drawn. As discussed, Huszar was aware of the current litigation and should have known the evidence might be relevant.   Thus, it is reasonable to infer Huszar spoliated evidence.   This in turn permits the inference that the destroyed evidence is not only adverse to Huszar but goes directly to the merits of the claim for direct copyright infringement.  *See Apple Inc.*, 888 F. Supp. 2d at 993 ("In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it"). The negative inference drawn from the alleged facts purporting to show spoliation enables the court to reasonably infer Huszar directly infringed Dallas's copyright.   Because Dallas's factual allegations in the Proposed Complaint would constitute a valid and sufficient claim for direct copyright infringement against Huszar, its claim would not be futile.

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

ii.     Indirect Copyright Infringement

Dallas alleges Huszar is liable for indirect copyright infringement because he was cognizant of Tor's infringing capabilities and failed to secure, police, and protect against the use of his Internet or computers for improper purposes.  Integrity argues Dallas's claim of indirect copyright infringement is futile because Huszar had no knowledge of specific acts of infringement nor did he ever have the ability to know or identify the Tor users that may have engaged in the infringement.

As discussed, to be futile, Dallas must fail to sufficiently plead facts that would constitute a plausible claim for indirect copyright infringement.  The court therefore considers whether Dallas's allegation fails to state a claim for indirect copyright infringement.  Although "[t]he Copyright Act does not expressly render anyone liable for [another's] infringement," *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984), the Supreme Court has recognized two types of secondary infringement: contributory and vicarious infringement.[1]  An individual "who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of *another* may be liable as a 'contributory [copyright] infringer."  *Ellison*, 357 F.3d at 1076 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)) (italics in original).  The knowledge requirement for contributory infringement includes those with actual knowledge and those with "*reason to know* of direct infringement."  *Id.* (italics in original).

---

[1]To be liable for vicarious copyright infringement, a defendant must have the ability and right to supervise infringing activity and have a direct financial interest in the infringing activity. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001).  Huszar states he "did not receive any financial benefit from participating in the Tor Project."  (First Huszar Decl. ¶ 8.) Dallas does not provide the court with anything to  suggest this was not the case.  Accordingly, the court does not address vicarious copyright infringement.

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

A defendant is liable for indirect copyright infringement if the defendant acted to cause copyright infringement by knowingly and intentionally providing software suitable for illegal use. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 938 (2005). In *Grokster*, the Supreme Court addressed the question of contributory infringement. There, petitioners, a group of copyright holders, alleged respondents, servicers of free software products allowing users to share electronic files through peer-to-peer services, "knowingly and intentionally distributed their software to enable users to reproduce and distribute the copyrighted works in violation of the Copyright Act." *Id.* at 922. The Court determined the respondents contributorily infringed petitioners' copyrights because the respondents had "intentionally induc[ed] or encourage[ed] direct infringement." *Id.* at 929. The Court further explained that the appellants had shown intentional inducement by providing evidence of actual infringement by recipients of the infringing device and evidence that the respondents took "active steps" to encourage direct copyright infringement, such as: (1) providing software suitable for illegal use, or software in which a factfinder could conclude possessed the ability to download copyrighted files; (2) failing to develop filtering tools to diminish infringing activity; and (3) profiting from such activity. *Id.* at 936-40.

Dallas sufficiently alleges facts, which, taken as true, suggest Huszar provided software and/or hardware suitable for illegal use and is liable for indirect copyright infringement. First, there are sufficient allegations to plausibly infer that a user of Huszar's Tor VM directly infringed Dallas's copyright. Huszar himself argues the infringer was likely some unknown user of his Tor VM. Next, unlike many defendants in the BitTorrent cases filed in the Ninth Circuit,[2] Huszar was not merely a private consumer with no obligation to prevent others from using his

---

[2]The court amended this Findings and Recommendation to correctly state "the Ninth Circuit" instead of "this district."

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

Internet access for illegal copyright infringement. *See, e.g.*, *See Elf-Man, LLC v. Brown*, 996 F. Supp. 2d 1056, 1059 (E.D. Wash. 2014) (holding that "*Grokster* effectively forecloses any argument that private consumers have an affirmative obligation to prevent others from using their internet access for illegal copyright infringement"). Instead, much like the respondents in *Grokster*, Huszar actively and knowingly provided an unknown number of computer users worldwide with access to his Tor VM. Huszar's Tor VM allowed users to mask their identifying information and send any type of data, including files of copyrighted work, anonymously. *See, e.g.*, *United States v. Michaud*, 3:15-cr.05351-RJB, 2016 WL 337263, at *1 (W.D. Wash. Jan. 28, 2016) (explaining how the Tor network operates). And Huszar, like the *Grokster* respondents, acknowledges he was aware of Tor's infringing capabilities. (*See* Second Huszar Decl. ¶ 10) ("It is my understanding BitTorrent . . . runs on a client machine, which connects to the internet through . . . a Tor Node.") Despite this awareness, the record suggests Huszar failed to develop any filtering tools to diminish illegal activity.

Such factual allegations, when viewed in the light most favorable to Dallas and accepted as true, are "enough to raise the right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the assertion Huszar was unaware of specific acts of infringement or the identity of the Tor users that may have engaged in the infringement is immaterial at the motion to dismiss stage. It is enough that Huszar provided software and/or hardware suitable for illegal use, had reason to know of direct infringement, and failed to develop any type of filtering tools to diminish the illegal activity despite this awareness. Dallas's claim for indirect copyright infringement is therefore not futile.

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

iii.        Requirement to Register

Dallas alleges Huszar failed to meet the requirements to register an assumed business name found in OR. REV. STAT. § 648.007.  Specifically, Dallas alleges Huszar is carrying on a business under an assumed business name – Designer Visuals – in Clackamas County, Oregon, and doing so without a proper agent for service of process.  Integrity argues this claim is futile because, "[a]s is evident from publicly available data, [] Huszar first registered Designer Visuals in 2009 and has named himself as [the] authorized representative."  (Reply, at 8.)

An assumed business name is one or more words used to identify a business if the person or persons carrying on the business do not "conspicuously" disclose the true name of each person carrying on the business.  OR. REV. STAT § 648.005 (2016).  OR. REV. STAT. § 648.007 states "[n]o person shall carry on, conduct or transact business under an assumed business name . . . unless the person has registered the assumed business name . . . and maintains a current registration."  "In a suit in which the cause of action arises out of business that the defendant carried on, conducted or transacted in violation of ORS 648.007, the plaintiff shall be entitled to recover $500 or the actual costs . . . incurred to ascertain the real and true name of the defendant, whichever is greater."  OR. REV. STAT §  648.135 (2016).

A current registration is maintained by submitting an application to Oregon's Office of the Secretary of State.  OR. REV. STAT § 648.010(1) (2016).  The application must state: the assumed business name; the true name and address of each individual conducting the business; the business's principal address and each county in which the applicant intends to conduct business; the name and mailing address of the business's authorized representative; the primary business activity; and any other information deemed necessary by the Secretary of State.  OR. REV. STAT § 648.010(2).  The person named as the business's authorized representative "is not

by the application of registration made the [business's] agent for the service of process."   OR.

REV. STAT § 648.010(3).

Dallas's claim that Huszar failed to properly register Designer Visuals as an assumed business name is futile for two reasons.   First, Dallas does not have a right of action under Chapter 648.   Chapter 648 plainly envisions a right of action in a case that arises out of business that a defendant carried on, conducted, or transacted while acting under an improperly registered assumed business name.   Dallas's third claim alleges Huszar was conducting business under an assumed business name without a proper agent for service of process.   This claim does not allege Huszar conducted any specific business transactions while acting under the assumed business name Designer Visuals, leaving Dallas's claim beyond the scope of Chapter 648 and rendering the claim futile.

While futility by itself is a sufficient basis to justify denying a motion to amend, *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), the court should simply dismiss this claim with prejudice.   Dallas fails to state a claim for failure to register irrespective of the defendant. Dallas's third claim for relief not only fails to allege Huszar conducted any specific business transactions while acting under the assumed business name Designer Visuals, but it also fails to allege Integrity – the currently named defendant – conducted any specific business transactions while acting under an improperly registered assumed business name.   Thus, regardless of the defendant, Dallas's third claim is beyond the scope of Chapter 648, is meritless, and should be dismissed with prejudice.

Second, even if Dallas had a right of action under Chapter 648, Dallas's claim is still futile and should be dismissed with prejudice because a court could not reasonably infer Huszar, or any defendant, actually violated OR. REV. STAT.  § 648.007.   In support of its claim, Dallas

points only to the allegation that Designer Visuals is operating "without a proper agent for service."  There is no requirement in Chapter 648, however, that an applicant name a proper agent for the service of process.  Chapter 648 requires only that the applicant provide the name and address of the business's authorized representative.  Huszar complied with this requirement, as he properly named himself as Designer Visuals's authorized representative.  Dallas thus fails to allege Huszar actually violated the requirements to register an assumed business name found in OR. REV. STAT. § 648.007.  In the absence of any such allegation, a court could not reasonably infer Huszar actually violated the statute, rendering Dallas's claim futile.

Again, while futility by itself is a sufficient basis to preclude amending a complaint, the court should simply dismiss this claim with prejudice.  The only alleged fact Dallas provides, in its First Amended Complaint or Proposed Complaint, to support this claim is the alleged fact that Designer Visuals is operating "without a proper agent for service."  As discussed, this does not violate the state statute Dallas purports to bring its claim under, regardless of the defendant.  Without factual allegations showing an actual violation of the statute, Dallas fails to supply enough factual matter to reasonable infer it is entitled to relief. Dallas's claim for violation of OR. REV. STAT.  § 648.007 lacks merit and should therefore be dismissed with prejudice.

C.  Conclusion

Based on the preceding analysis, Dallas should be permitted to remove Integrity as the defendant and name Huszar in its stead, but only with respect to its claims for direct and indirect copyright infringement.  Dallas's third claim for failure to register an assumed business is futile.  Futility by itself is a sufficient basis to preclude amending a complaint; however, instead of denying leave to substitute Huszar as the defendant in its third claim, the court should simply

AMENDED FINDINGS AND RECOMMENDATION

{TJK}

dismiss Dallas's third claim with prejudice, as the claim lacks merit no matter who the defendant is.

### Conclusion

Dallas's Motion for Leave to File an Amended Complaint (ECF No. 37) should be GRANTED in part and DENIED in part.  Specifically, Dallas's proposed amendment adding facts purporting to show spoliation should be GRANTED, as should Dallas's request to remove Integrity and substitute Huszar as the defendant, but only with respect to its claims for direct and indirect copyright infringement.  Dallas's third claim for failure to register is futile no matter whom it names as the defendant.  Thus, instead of simply precluding Dallas from amending to name Huszar as the defendant in its third claim for relief, the court should dismiss Dallas's third claim with prejudice.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 16, 2016.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of April, 2016.

_____
/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge

AMENDED FINDINGS AND RECOMMENDATION

{TJK}