IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DALLAS BUYERS CLUB, LLC**,

    Plaintiff,

  v.

**JOHN HUSZAR**,

    Defendant.

Case No. 3:15-cv-907-AC

**OPINION AND ORDER**

**Michael H. Simon, District Judge.**

    United States Magistrate Judge John V. Acosta issued Findings and Recommendation in this case on December 28, 2016. ECF 89. Judge Acosta recommended that Plaintiff Dallas Buyers, LLC's Motion to Strike (ECF 72) be granted in part. Specifically, Judge Acosta recommends: (1) denying the motion to strike Defendant's letter, docketed as an Answer in this matter (ECF 71), in its entirety; and (2) granting the motion in part and striking Defendant's assertions relating to his health and to settlement negotiations between the parties. Judge Acosta also recommends granting Plaintiff's Spoliation Motion (ECF 75) and, as sanctions for the spoliation, entering a default order against Defendant.

PAGE 1 – OPINION AND ORDER

Under the Federal Magistrates Act ("Act"), the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Defendant timely filed an objection (ECF 91), to which Plaintiff responded. ECF 93. Defendant objects to the portion of Judge Acosta's recommendation finding that Defendant intentionally and willfully destroyed evidence and that the appropriate sanction for that destruction is the entry of default against Defendant.

No party having objected to the portion of the Findings and Recommendation relating to Plaintiff's motion to strike, the Court follows the recommendation of the Advisory Committee and reviews that portion of the Findings and Recommendation for clear error on the face of the

PAGE 2 – OPINION AND ORDER

record. No such error is apparent. Accordingly, the Court adopts that portion of the Findings and Recommendation.

With his objections, Defendant offers additional factual information. Construing his *pro se* submission liberally and giving Defendant the benefit of the doubt, the Court construes the statements in Defendant's Objections as factual assertions by Defendant, even though they are not in the proper form of a Declaration or Affidavit. Additionally, Defendant offers an exhibit relating to his return of purportedly malfunctioning hard drives under a warranty plan and the Declaration of his court-appointed counsel, who was appointed to provide three hours of legal services to Defendant without charge. In responding to Defendant's objections, Plaintiff references some of this new evidence and does not raise any objection to the additional evidence. The Court exercises its discretion to consider this additional evidence. *See* 28 U.S.C. § 636(b)(1) (permitting a court to "receive further evidence" at its discretion); *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (discussing the Circuit split on whether a district court must or may consider new evidence when reviewing *de novo* a magistrate judge's findings and recommendation, and concluding that a district "has discretion, but is not required" to consider new evidence).

## DISCUSSION

The Court reviews *de novo* Plaintiff's Spoliation Motion. The Court agrees with the Findings and Recommendation that spoliation of evidence occurred. In light of the record as a whole, including the newly-submitted evidence that was not submitted to Judge Acosta, the Court does not adopt the portion of the Findings and Recommendation recommending the sanction of an entry of default against Defendant.

PAGE 3 – OPINION AND ORDER

### A. Legal Standards on Imposing Sanctions

Courts have the authority to levy sanctions for spoliation of relevant evidence. *See United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) ("Under its inherent power to control litigation, a district court may levy sanctions, including dismissal of the action, for spoliation of evidence."). In considering what spoliation sanction to impose, courts generally consider three factors: "'(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.'" *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994)). The Ninth Circuit has emphasized, however, that before imposing the most severe sanctions, such as dismissal or entry of default, a "district court should consider the following factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).

### B. Background

Plaintiff alleges that Defendant infringed on Plaintiff's rights to its movie *Dallas Buyers Club* by illegally downloading the movie using BitTorrent software. Defendant owns a small business that provides internet services, including network and email services. Defendant denies that he downloaded *Dallas Buyers Club*. He contends that he had not even heard of the movie until this lawsuit and that after learning about the movie, he has no interest in seeing it.

Defendant also asserts that he has never downloaded a movie using BitTorrent software and would not risk his livelihood or his customer base by engaging in such activity.

The internet protocol ("IP") address identified by Plaintiff as infringing on Plaintiff's movie is an IP address associated with a one of Defendant's servers. Defendant operated this server as a virtual machine ("VM"). Using VM technology, Defendant migrated information from his old multiple servers onto two servers operating as VMs. One of these is the physical machine associated with the allegedly infringing IP address ("Infringing Machine").

On the Infringing Machine, Defendant installed Tor Network software and created a "Tor Node," which facilitates use of the Tor Network by end users by routing information through Defendant's machine. Also on this machine were VMs for two email servers. The Infringing Machine had two hard drives, which were mirrored. Defendant did not use the Infringing Machine as a personal computer and did not attach any personal computer to this machine. The Infringing Machine was located on a server rack.

Plaintiff originally sued a "Doe" defendant associated with the infringing IP address. In October 2015, Plaintiff amended the complaint to, among other things, name as the defendant Integrity Computer Services, the former name of Defendant's business. On February 26, 2016, Plaintiff sought leave of the Court to amend the complaint to name Defendant. The Court granted leave and Plaintiff's Second Amended Complaint was filed on July 7, 2016.

Although not named as the defendant in this case until July 2016, Defendant learned about this lawsuit sometime in June or July 2015. In August 2015 he had problems with the hard drives and RAID controller (to which both hard drives are connected) on the Infringing Machine. He hired a technician to repair the server. On December 18, 2015, Defendant participated in an in-court conference with counsel for Plaintiff before Judge Acosta. At that conference, Plaintiff

PAGE 5 – OPINION AND ORDER

represented that the claims against Defendant involved use of the BitTorrent network and noted that there appeared to be multiple computers at Defendant's residence and business. Judge Acosta ordered the parties to confer on a discovery plan by January 11, 2016.

Defendant asserts that in mid-December 2015, the hard drives and RAID controller on the Infringing Machine again exhibited signs of failure. He used the same procedures used by the technician in August 2015, and was able to restore functionality. He then migrated his business-related VMs off of the Infringing Machine and onto his second server. He did not migrate the Tor Node or software.

The RAID controller has some internal utility tools. In January 2016, Defendant used one of these tools, purportedly in an attempt to repair the recurring failures. This tool wrote data to every sector of the hard drives and then immediately read the data back again. This had the effect of overwriting all of the date on the Infringing Machine. Defendant disclosed this during his deposition in February 2016.

Defendant explains that he did not migrate the Tor VM from the failing hard drives because it was not as important as his business-related VMs and because he was considering stopping his operation of the Tor Node in an attempt to amicably resolve this lawsuit. Benjamin Justus, former counsel for Plaintiff, describes in his declaration that on January 5, 2016 and approximately January 7, 2016, Mr. Justus had conversations with Defendant. In both of those conversations, Mr. Justus conveyed to Defendant that counsel for Plaintiff wanted Defendant to shut down his Tor Node. Defendant responded to Mr. Justus that although he operates the Tor Node for ideological reasons, he would consider stopping if it might help resolve this lawsuit. Defendant explains in his filing before this Court that he was "seriously considering ceasing []

participation in the Tor Network anyway, when the computer system (on which Tor was running) failed for the 2nd time." ECF 91 at 4.

**C. Analysis**

The Court agrees with the Findings and Recommendation that Defendant was on notice of the lawsuit before the destruction of the hard drives, and was specifically on notice that his computers and servers were relevant to the claims of the lawsuit. Thus, Defendant should have preserved the Infringing Machine hard drives. Further, the Court agrees with the Findings and Recommendation that the loss of the Infringing Machine hard drives created possible prejudice to Plaintiff. Although Defendant disputes that any useful information could have been retrieved from the hard drive because Tor Nodes, by their nature, do not include the type of tracking information that would allow identification of the end user who downloaded Plaintiff's movie, there is no way for Plaintiff to confirm that without the benefit of the hard drives and the ability to forensically examine them.

Where the Court disagrees with the Findings and Recommendation is in analyzing Plaintiff's intent and concluding that the only appropriate sanction is the entry of default against Defendant. The Findings and Recommendation found that Defendant's intent is demonstrated, in part, because Defendant supplied two "distinct" and "unrelated" explanations for why the Tor Node evidence was destroyed—one being that he attempted to restore the server using the RAID tool and the second being that he did so because Plaintiff's counsel demanded it. The Court disagrees that these are two distinct and unrelated reasons. With the benefit of Mr. Justus's declaration and Plaintiff's further explanation, these reasons now appear to be connected and thus are not inconsistent with one another. Defendant decided to stop running the Tor Node because of the demands of this lawsuit and Plaintiff's counsel, and as such Defendant was not

PAGE 7 – OPINION AND ORDER

concerned about migrating the Tor VM or losing the Tor software and associated data when he used the RAID tool to overwrite the hard drives in an attempt to repair the drives.

The Court also notes that although Defendant's understanding that the hard drives would not contain any useful information do not ameliorate the potential prejudice to Plaintiff, it does go to Defendant's motive and intent. The Court finds credible Defendant's statements that he genuinely believed that his hard drives would not contain any information that would identify or provide relevant data relating to the alleged infringement, based on his understanding of how Tor Nodes operate. Defendant explained his understanding and the basis for it in detail.

The Court also finds instructive the unique facts of this case. The Infringing Machine was not a personal computer from which all data was wiped with after-market software. The Infringing Machine was a Tor Node that routed information for other end users around the world. As Defendant points out, it is questionable that he had a motive to deceive the Court by wiping information that may or may not have identified some unknown user somewhere in the world.

The severe sanction of dismissal or default is available "when 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings' because 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch*, 69 F.3d at 348). The Court does not find Defendant's actions rise to this level of misconduct. Moreover, entering a default and thus a finding that Defendant downloaded Plaintiff's movie is too drastic of a consequence for the destruction of hard drives that may have contained information that might have helped identify the actual infringer, if not Defendant.

PAGE 8 – OPINION AND ORDER

Because Defendant, however, did intentionally destroy the hard drives that could potentially have provided Plaintiff with information necessary to identify the infringing party and prove Plaintiff's claims, the Court finds that some sanction is warranted. The Court considers the five factors as established by the Ninth Circuit. The Court acknowledges the policy favoring disposition on the merits, and this case can be resolved expeditiously without the entry of default. Further, although continuing with this litigation adds to the Court's docket, it is not an unreasonable burden. The Court also recognizes the potential prejudice to Plaintiff. But the Court follows the Ninth Circuit's instruction to consider less drastic sanctions. The Court finds that the sanction of an adverse inference instruction is adequate under the facts of this case. Although an adverse inference instruction is not as drastic as a default order, it is still a harsh remedy and will sufficiently compensate for the potential prejudice suffered by Plaintiff. *See Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993-94 (N.D. Cal. 2012) ("Certainly, an adverse inference instruction is a 'lesser' sanction than dismissal or default. That it is a comparatively less severe sanction, however, does not mean it should be imposed casually." (citing cases)); *Keithley v. Homestore.com, Inc.*, 2008 WL 4830752, at *10 (N.D. Cal. Nov. 6, 2008) (noting that "an adverse inference instruction is a harsh remedy").

## CONCLUSION

The Findings and Recommendation (ECF 89) is ADOPTED IN PART, as explained in this Opinion and Order. Plaintiff's Motion to Strike (ECF 72) is GRANTED IN PART. This motion is denied with respect to its request that Defendant's Answer be stricken in its entirety, but is granted in that Defendant's assertions in his Answer relating to his health and to settlement negotiations between the parties are STRICKEN. Plaintiff's Spoliation Motion (ECF 75) is GRANTED IN PART. The Court finds that Defendant destroyed evidence and that the sanction

of an adverse inference instruction is warranted. Accordingly, the Court orders that the jury shall be instructed as follows:

> Defendant John Huszar has failed to preserve computer hard drives that may have contained evidence relevant to this case. You may presume that the lost evidence was favorable to Plaintiff. Whether this finding is important to you in reaching a verdict in this case is for you to decide.

**IT IS SO ORDERED**.

DATED this 6th day of February, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
