Michael O. Stevens, OSB No. 095198
email: michael@hillsborofirm.com
STEVENS & LEGAL, LLC
3699 NW John Olsen Place
Hillsboro, OR 97124
Tel: (971) 533-6178
Fax: (971) 228-2608


Attorney for Defendant JOHN HUSZAR subscriber assigned IP address

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DALLAS BUYERS CLUB, LLC,** | Case No.: 3:15-cv-0907-AC |
| Plaintiff, | DEFENDANT'S STATUS REPORT RE: |
| v. | I.   Depository Copies |
| | II.  PCAP Costs |
| **JOHN HUSZAR** | |
| Defendant. | |

Defendant, JOHN HUSZAR ("Defendant" or "Huszar"), provides this status report regarding the Depository Copy and the estimated cost for Maverickeye to produce the PCAP data. Huszar appreciates the extension of time provided by the Court to file this report.

To summarize the discovery issues at hand. Defendant requested that Plaintiff produce the *depository copy* (i.e. the copy submitted to the Copyright Office). Plaintiff has offered a "DVD release copy". The DVD Release copy is not identical to the depository copy. The "DVD Copy" was not registered with the Copyright Office. The Copyright Office does not have the depository

copy and has transferred it to the Library of Congress Collections.[1]

Defendant's co-counsel, J. Curtis Edmondson, has been corresponding with Universal Picture's in-house counsel, Avi Braz, at Universal Studios on several occasions on this issue: September 5, 2017,  September 4, 2017, July 31, 2017, and July 27, 2017.

Universal Studios registered the depository copy with the Copyright Office. The current status is that Universal can produce a copy of the depository copy for an amount in excess of $10,000.00 or screen the film at Universal's studio for $1,000.00 to $2,000.00.

As for the PCAP data.  Defendant requested PCAP data from the Plaintiff. For example, the "raw data" showing the file transfer. Plaintiff avers that either Excipio or Maverickeye UG has this data and will only provide it at a cost of approximately $310.00 per PCAP and can order it directly from Maverickeye UG.  Objectively, the PCAP costs should range from $0.024 to $10 per PCAP.

I.    **DEPOSITORY COPY**

It appears that despite suing approximately 1,000 individuals for infringement during the past three years, Dallas Buyers Club, LLC is not in possession or control of the depository copy.

---

[1] Email on July 11, 2017 from Copyright Office - Good morning, Thank you for contacting Records Research and Certification. Unfortunately, the work in your inquiry (PA 1-873-195) has been transferred to the Library of Congress Collections and is no longer part of the Copyright Office Collections.

The depository copy[2] of the work *Dallas Buyer's Club*, which is referenced in the copyright certificate, appears to only accessible[3] at the Universal Studios vault and/or in another location in two formats:

a. a single *film copy* which may exist in the vault at Universal Studios; and

b. a "*non-standard digital version*" (estimated size of +4TB) that was used to burn each individual frame of the film copy.

*Film Copy*

A copy of the film version can be produced at an estimated cost in excess of $10,000.00. This procedure would take from 1-2 months by an outside processing lab.

Alternately, the film copy can be set up for screening at an estimated cost of $1,000.00 - $2,000.00.  When asked if an AEO copy of the screened *Dallas Buyer's Club* film could be made by the Defendant at the screening (by "filming the movie"), Universal's counsel would not confirm this possibility unless there was a proper release from Focus Features.[4]

*Non-Standard Digital Version*

This format, according to Universal's counsel, is in a non-standard digital format and would be difficult to process.

---

[2] 17 USC 407(a) - Except as provided by subsection (c), and subject to the provisions of subsection (e), the owner of copyright or of the exclusive right of publication in a work published in the United States shall deposit, within three months after the date of such publication—(1) two complete copies of the best edition…

[3] A copy may exist at the Library of Congress Collections
[4] Conversation with Avi Braz on September 5, 2017

## II.    **PCAP Cost Data**

The second discovery issue is how to determine the cost to create PCAP data.  As a point of reference, the PCAP data is the raw data transmission from the alleged infringing computer to the Excipio/MaverickeyeUG monitoring system.  In short, it is one piece of evidence that Plaintiff could use to attempt to show that the computer connected to the target IP address "infringed".

How to estimate the cost to create PCAP data is estimated by Defendant's counsel, Edmondson, due to a lack of data from Plaintiff.    This estimate is based on three approaches:

1) Actual PCAP Storage Costs
2) What Excipio/MaverickeyeUG has charged in the past for PCAP Data
3) Operator Generation Costs

### 1.    Actual PCAP Production Cost – How Much Data needs to be stored?

MaverickeyeUG/Excipio[5] is currently reticent about describing the system used to record the data. Defendant has requested documents regarding the system architecture of the Excipio/Maverickeye UG system to try and determine costs. Defense counsel must infer the system architecture based on other filings.

Past filings in other districts indicate the system architecture regarding the Excipio/Maverickeye UG System Architecture from two key developers: Tobias Fieser and Michael Patzer.  Tobias Fieser described the system architecture for BitTorrent Monitoring in an exhibit filed in *Patrick Collins v. Does 1-26* 3:11-cv-00394-FDW-DSC (WDNC 2011).  [Ex1].  In 2014, Patzer further confirmed this architecture in *Dallas Buyers Club v. Madsen* 14-cv-1153 (WDWA 2014). [Ex 2].  In 2016, Defendant's counsel took depositions of Fieser and Patzer in the case of *Malibu Media vs. Doe* 15-0441 (ND CAL 2015).  Patzer testified he designed the system,

---

[5] Excipio/Maverickeye goes by a number of names:  Guardaley, IPP International, Crystal Bay Corporation, Maverickeye.  All entities operate in a similar way and are run by Patrick Achache and Ben Perino.

and Fieser wrote the code.  Patzer also confirmed the system only records 16KB per targeted infringer.

The total amount of data needed to be stored to create the PCAP's is relatively modest by today's standards.  Assume that 500,000 infringers[6] are targeted by Excipio/Maverickeye (this overestimates actual infringers sued by an order of magnitude).   The storage requirements would be for each infringer (See Ex. 1, pg. 000007):

| Data Field | Example | Storage (Bytes) |
|---|---|---|
| 1.  IP Address: | 172.16.254.1 | 4 |
| 2.  Capture Time | YYYYMMDDHHMMSS.uuuuuu | 21 |
| 3.  Name of Protocol | FTP | 30 (est) |
| 4.  Filename | downloadmovie.mp4 | 64 |
| 5.  Filesize | 123456 | 8 (est) |
| 6.  Hash Value | A34… | 16 |
| 7.  GUID | 2d7e27ca-1dfa… | 32 |
| 8.  Username | ex "Chop" | 64 |
| 9.  Clientname | jcedmondson | 64 |
| 10. Content Download | (varies) | 27KB (est) |
|  |  | 28KB (approx.) |

*500,000 * 28 KBytes = 14,000,000 KB or 14GB*

This assumes that there are 100 individuals in a "swarm", and the system stores one film per torrent, then the average film size is 2GB.

*500,000/100 = 5,000 swarms * 2GB = 10TB.*

---

[6] It is estimated 15,000 lawsuits have been filed using Plaintiff's monitoring system, See Exhibit 4 – "Defense Against The Dark Arts of Copyright Trolling", Sag & Haskell, Pg. 000002-000004 for Statistics.

Therefore, the total data storage requirements is 10TB for 500,000 infringers. Excipio/Maverickeye does not appear to assist in providing data for more than 10,000 lawsuits per year for both porn and non-porn works.

The current price of a 30TB disk array is approximately $1,795.00. (Amazon Pricing). Assume that the computer server costs $10,000.00, the total cost is approximately $12,000.00.

Michael Patzer testified at this deposition that all data is readily accessible. [Exhibit 3, Patzer Deposition]. So, although it may be archived to a "WORM" drive, the data is not archived and is readily accessible.

To summarize, the cost to store each PCAP would be $12,000 per 500,000 PCAP's or $0.024 per PCAP.


2. <u>What Excipio/MaverickeyeUG has charged in the past (Market Based)</u>

Defendant's counsel, Edmondson, has request PCAP data from Excipio in *Malibu Media v. John Doe* 15-04441 (ND CAL 2016) and received 23 PCAP's at no charge. Also, Defendant's counsel requested PCAP's in *Clear Skies Nevada vs. Hancock 15-CV-6708* (ND IL 2015) and received the PCAP at no charge. Defendant's counsel, Edmondson, asked Plaintiff's counsel David Lowe in WDWA for a copy of his PCAP in *LHF Productions v. Khan* 17-cv-782RSM (WD WA 2017) and Plaintiff's counsel stated he never orders PCAP's in advance, so he had no information.

Carl Crowell presented an "invoice" [Ex. 6.] for the PCAP on this case of $ 310.00.

An informal survey in the District of Oregon on July 27, 2017, brought these responses from three separate counsel that stated that they saw the practice of "charging" as improper and would move to object to the use of the PCAP data at trial if it was produced by the Plaintiff without

first being produced in discovery.  Since no case has gone to trial, there were no purchases of

PCAP data from Plaintiff's counsel per the survey.

Defendant's counsel, Edmondson, also reviewed the MaverickeyeUG Website (see Exhibit

5, http://www.maverickeye.de/).  There is no "price book" or "sales literature" regarding the

ordering of PCAP's from Maverickeye. Co-counsel Edmondson, tried to reach out to

MaverickeyeUG directly by electronic mail to "purchase PCAP's". Maverickeye was

unresponsive to this request.

To summarize, there is little "market data" regarding PCAP costs.


3.   PCAP Operator Production Costs

Another metric would be the operator time to: 1) retrieve a transaction (i.e. database

lookup); 2) execute an export function; and 3) attach the exported file to an email.  This process is

probably no more difficult than saving data from an Excel Spreadsheet.

The collection of data needed to detect the infringement is required to "target" the infringer

per the system specifications.  To "export" the data in "Packet Capture" format (i.e. something that

can be read by Wireshark or an equivalent utility) can be done using "off the shelf" code.  The

reality is that any system would want to be able to export a transaction in PCAP format for

diagnostic and verification purposes.

Assuming that this process takes approximately 15 minutes of operator time, the PCAP

cost would be approximately $10.00.[7]

---

[7] Estimated at $ 40.00/hr, but Excipio/MaverickeyeUG has outsourced back-office processing to
an IT firm on the island of Cebu, Philippines so actual costs are probably much less.

4.  <u>Summary of Cost Estimates</u>

The estimates are based on the experience of co-counsel, Edmondson's work in the computer industry for 20 years prior to becoming a patent lawyer.  To summarize these estimates:

1)  Storage Cost Estimate – $0.024 per PCAP.
2)  Market Based Cost Estimate – No evidence of Market Costs for PCAP
3)  Operator Cost Estimate – $10.00 per PCAP


 If Excipio/MaverickeyeUG provides more information, allows a site inspection, or lets corporate officers/engineers to be deposed, this estimate could be refined.




DATED: September 7, 2017

                                                    Respectfully submitted,

                                                    STEVENS & LEGAL, LLC

                                                    By:  /s/ Michael O. Stevens
                                                    Michael O. Stevens, OSB No. 095198
                                                    michael@hillsborofirm.com
                                                    Attorney for Defendant

                                                    LAW OFFICES of J. CURTIS
                                                    EDMONDSON, PLLC

                                                    By:  /s/ J. Curtis Edmondson
                                                    J. Curtis Edmondson, Pro Hac Vice
                                                    jcedmondson@edmolaw.com
                                                    Attorney for Defendant

Exhibit "1"

# EXHIBIT 1

**TO: DECLARATION OF TOBIAS FIESER IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE**

IPP international LTD.

# FUNCTIONAL DESCRIPTION

IPP international IPTRACKER v1.2.1

2

PCAP Survey - Exhibit 1, Pg. 000002

Page 2                                        March 8, 2011

## Table of contents

1    Introduction ................................................................................................. 3

2    The program IPP international IPTRACKER v1.2.1 ........................................ 4

   2.1    Description of Action............................................................................ 4

      2.1.1    Filesearch ................................................................................ 4

      2.1.2    Summarization of the procedure............................................... 4

      2.1.3    Safety of IP and other connection data...................................... 4

      2.1.4    The date and time..................................................................... 4

   2.2    Visualisation of the process ................................................................. 5

   2.3    Description of the most important program functions............................. 6

3    Logdata database................................................................................... 7

   3.1    Protection of data privacy and data security ........................................ 7

4    Addendum............................................................................................... 8

   Gnutella  ...................................................................................................... 9

   Gnutella 2 .................................................................................................... 9

   eDonkey2000 (Ed2k)................................................................................... 10

   Bittorrent (BT)............................................................................................ 11

   Globally Unique Identifier (GUID)................................................................ 12

   The hash value ........................................................................................... 12

PCAP Survey - Exhibit 1, Pg. 000003

Page 3                                March 8, 2011

# 1 Introduction

The following disquisition introduces the software IPP international IPTRACKER. The software was developed to determine copyright violations in peer-to-peer networks (called P2P networks) and to preserve evidences during illegal distribution of copyright protected material.

P2P allows spreading data of every kind (software, music, video etc.) via the Internet fast. The data is saved on the computers of the participants and is distributed by common P2P software products which are available on the Internet for free. The Data is usually copied from foreign computers (called download) while other data is sent at the same time (called upload). Every participant can release files on his computer and make it available to others, comparable to the file release function within a local network. The files are copied via direct connection between the computers. P2P networks have millions of users and offer an enormous variety of files.

The procedure itself is legal for data which is not under copyright.

A common description of the operation of most commonly used P2P peer-to-peer techniques used to exchange data on the Internet can be found in the addendum.

PCAP Survey - Exhibit 1, Pg. 000004

Page 4                          March 8, 2011

# 2  The program IPP international IPTRACKER v1.2.1

## 2.1  Description of Action

### 2.1.1  Filesearch

Once a file is downloaded, verified and definitely allocated to a Rights holder, the hash value is used to determine possible sources on the internet. Different servers, trackers and clients provide lists of IPs where the specific file could or still can be downloaded.

### 2.1.2  Summarization of the procedure

These lists are downloaded from the providing system and computed sequentially. Each IP found in these lists is requested using the common P2P protocol functions. If the requested P2P client confirms the existence of the file on the local hard disc (in the shared folders), the download is started.
If the part downloaded is sufficient to be verified and compared to the original, the IP address and exact time and date is stored in a secure database.
The download process is continued.

After completion of the download process and before the stored information is used for further steps the downloaded data is compared with the original (complete already downloaded and verified file) bit by bit.

### 2.1.3  Safety of IP and other connection data

A direct and continuous connection between the IPTRACKER-server and the uploader of the file is established and exists at least 10 seconds before, during and at least 10 seconds after the capture sequence i.e. during the whole download process.

Optionally the screen can be capture automatically to backup another evidence.

### 2.1.4  The date and time

The (IPTRACKER-) server date and time is synchronised every minute via Network time protocol (NTP). This function is provided by an additional program
(Dimension 4 v5.0 http://www.thinkman.com/dimension4).
The synchronization report is saved frequently and redundantly stored on a file server. The time is received from the Federal technological Institute in Brunswick (Physikalisch-Technische Bundesanstalt in Braunschweig) and has a maximum deviation of for 1/10 second (atomic clock).

Several other redundant institutes providing the exact time are stored in an internal database of the program: Dimension 4.

PCAP Survey - Exhibit 1, Pg. 000005

Page 5                                        March 8, 2011

## 2.2  Visualisation of the process



Filerequest
Knotinformation
IP: 116.10.223.21

*BT/ED2k Server*

Packagerequest
Acknowledgement
if available

*Infringer's Client*

Filecontent
Filecontent
Filecontent

*GL Observer*

IP:116.10.223.21
ATOMIC TIME:
08:05:58 26.10.2008 (MET)

ATOMIC TIME:
08:05:58 26.10.2008
(MET)

[Screenshot]        [Encryption/Signature]

*Timeserver*
Atomic Clock
Sync Interval: 1minute
Stored protocol

*Fileserver*
Raid 5
encrypted
passwordprotected

*Database*
encrypted
passwordprotected
WRITE permission only

PCAP Survey - Exhibit 1, Pg. 000006

Page 6                          March 8, 2011

### 2.3   Description of the most important program functions

The IPP international IPTRACKER is based on the hybrid Filesharing client Shareaza 2.4.0.0. All communication interfaces correspond to the specifications of the P2P protocols Bittorrent, Gnutella 1 and 2 as well as ED2k. These interfaces were left invariably in the filesharing client.

The function of the upload in addition was reduced to a minimum (handshaking).
The IPP international IPTRACKER merely stores the data of the hosts connected with, if the package verification succeeds.

- IP address
- port
- exact capture time
- name of the protocol
- filename
- file size
- hash values of the file (SHA1, ED2k, BiTH)
- GUID
- username
- clientname
- content downloaded

A screenshot of the host can be made by the IPTRACKER program. The host is marked automatically during the download phase to safeguard another evidence. Not relevant entries are masked. The name of the screenshot is also stored in the database.

To guarantee the immutability of the data, IP, date and time is signed with a private 4096 bit RSA key. The RSA key is included internally in the IPTRACKER program using a precompiled library and can be not read or used elsewhere.

RSA is a recognized asymmetrical encoding procedure which can be used both for the encoding and for the digital signature. It uses a key pair consisting of a private key which is used decode or sign data and a public key with which decoding or signature checks are made possible. Both keys are kept secret.

7

PCAP Survey - Exhibit 1, Pg. 000007

Page 7                              March 8, 2011

## 3  Logdata database

The data is stored in a MySQL database. The database server runs locally as a service on the respective server. The connection is established via ODBC driver: MyODBC-3.51.11. The query language is SQL. The IPTRACKER program accesses the database exclusively writing. The entries right-related cannot be changed.

The data is exclusively submitted as data sheets for the assertion of the injured rights.

### 3.1  Protection of data privacy and data security

The rack-servers are stored in a room which is locked and protected with most current security mechanisms.

The database is password protected and stored on an encoded hard disk. The hard disk is encoded with TrueCrypt 6.0 using AES encryption. The password is not saved on any computer, only known by two people and has more than 25 signs. It must be entered manually at every system startup. When the hard disk is removed from the computer or the power supply, it has to be mounted again using the password.

If the hard disk should be reached by unauthorized people, the data security is therefore ensured at any time.

To maximize data security, the IPTRACKER program offers an implemented program function which permits not only to sign but also to encode completely relevant data. So the data cannot be seen or changed even by persons with direct access to the server.

To create valid entries the secret key pair is necessary. It is not possibly to store data manually at any time.

Only the IPTRACKER program is able to create valid data.

The data can only be decoded and used by the responsible lawyer, only his software contains the deciphering method and this one in this case also secret (called "public") key.

PCAP Survey - Exhibit 1, Pg. 000008

Page 8                              March 8, 2011

# 4  Addendum

*Basic Knowledge*

P2P networks can be subdivided into several groups using their structure and operation.

**Centralized P2P systems**
These systems are using a central server to which all knots are connected. All search enquiries from the knots are processed by the server. The basis of P2P systems is the data transmission between the individual knots. A direct connection between the knots is established when the file is found on a specific knot.

The server is the bottle of the neck in this process.

Nowadays centralized P2P systems are of more minor importance.

**Pure P2P systems without a central instance**
There are networks without a central server which do not manage any central data stock (Gnutella1 and Gnutella2 network).

**P2P-Filesharing networks via server client protocol**
There are networks with one or several central servers which manage information about the users connected at present. This is provided by the Bittorrent and eDonkey network. With the installation of Emule the users receive a list of all users (file: server.met) attached to a server and all released files. Bittorrent and eDonkey cover currently 95% of the exchange activity.

PCAP Survey - Exhibit 1, Pg. 000009

Page 9                              March 8, 2011

## Gnutella

Gnutella is a P2P network decentralized completely which can be observed by the IPP international IPTRACKER software. "Decentralized" means that every knot uses a similar software and there are no central servers which process search enquiries.

A search query is passed to the neighbouring systems at first. These systems refer the query to their neighbours until the requested file was found. After that a direct connection for the data transmission can be established between searching and offering knot

## Gnutella 2

Gnutella 2 works most largely like the original Gnutella network with a similar connection system but Unicode2 search function with extensive metadata, TigerTree Hashing, and generally faster link speed. A "Partial file Sharing" function was implemented which divides files into parts. It's possible to download these parts from different knots instead of downloading the whole file from one knot.

Some known Gnutella2 clients are:
Shareaza, Morpheus, Gnucleus, adaglo, MLDonkey



PCAP Survey - Exhibit 1, Pg. 000010

Page 10                           March 8, 2011

### eDonkey2000 (Ed2k)

The eDonkey2000 peer to peer network needs server to connect the knots. The server only provides lists of files which are available on the individual knots.

Some Edonkey2000 clients are: eMule, eMulePlus, aMule, xMule, MLDonkey, Lphant



PCAP Survey - Exhibit 1, Pg. 000011

**Bittorrent (BT)**

BitTorrent is used for the fast distribution of large amounts of data in which central servers are controlling the location of the files.

BitTorrent does not behave like a usual P2P network. There is no search function like it is available it at EDonkey or Gnutella clients.

To get all necessary information for a download, a .torrent file is downloaded (from another network or an internet page). It contains all information to start the download.

The Bittorrent participants connect with the so-called tracker of this file and with that with other users who also are interested in at this file. A private network is built.

Trackerless systems were developed in new versions. The tracker function is done by the client software. This avoids some of the previous problems (e.g. the missing failure safety of the trackers).

Some Bittorrent clients are: Shareaza, BitComet, Azureus



12

PCAP Survey - Exhibit 1, Pg. 000012

Page 12                               March 8, 2011

### Globally Unique Identifier (GUID)

Every P2P user receives a unique identification which consists of a 32-digit hexadecimal number. The user receives the identification at the moment of the installation of the P2P program. The program generates the GUID from user-specific data. So it is possible that a user has several GUID identifications (e.g. he gets a new GUID at the installation of a network client), however, it is not possible that an allocated GUID is allocated to another user again.

### The hash value

The hash value is necessary to identify a file.

A special advantage of Bittorrent, eDonkey and Gnutella networks is the fault-free data transmission between the users. Bigger files are subdivided into little packages. For every package a single identification value is generated using known algorithms. The hash value is frequently described as a fingerprint since it is unique similarly like a fingerprint.

i.e. each file exceeding the size of 2 megabytes owes more than one hash value - one for the whole file and one for each package.

Standard operation of common P2P-client programs during the filesharing process:

The client software must guarantee that the received content is always the queried one. Therefore only hash values are requested—filenames are unimportant during the transmission.

After a client received a data package the content has to be verified. Therefore the hash value of the package is generated by the client and compared to the hash value provided before. If the two keys are identical, the downloaded package is accepted. If there are deviations at the comparison, then the package is declined and requested again. The package can also be downloaded from another knot.

All mentioned programs are able to split bigger files into packages and to identify these using hash values independently which program is used for the data exchange. With this it is possible to assign small parts of a file to the original file. It is made sure that the part of the file always belongs to the requested file.

After the whole file is downloaded it will be verified on the whole before the download process is finished and the file is signed as "VERIFIED".

Every network uses different hash algorithms. Bittorrent the so-called "BiTH", eDonkey this one "ED2K", and Gnutella the "SHA1" algorithm.

The IPP international IPTRACKER is able to generate and compare each hash algorithm listed above.

PCAP Survey - Exhibit 1, Pg. 000013

Exhibit "2"

Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

DALLAS BUYERS CLUB, LLC,

Plaintiff,

v.

TYLER MADSEN et al.,

Defendants.

Civil Action No. 14-cv-1153RAJ

DECLARATION OF MICHAEL PATZER
IN SUPPORT OF DEFAULT JUDGMENT

I, Michael Patzer, declare as follows:

1.     I am over the age of 18 and am otherwise competent to make this declaration. This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

2.     I work as an independent contractor predominantly for Excipio GmbH, a German company. I have extensive personal knowledge of Excipio's business.

3.     I personally designed, implemented, monitor and maintain the data collection system that Excipio both owns and uses to identify the IP Addresses used by people to commit copyright infringement via the BitTorrent Protocol.

4.     Excipio contracts with Crystal Bay Corporation ("Crystal Bay") to provide Crystal Bay with this data collection system, which is the system that Crystal Bay uses to detect infringement of Plaintiff's works. Specifically, Crystal Bay licenses the use of Excipio's system and servers.

DECLARATION OF MICAHEL PATZER - 1
Civil Action No. 14-cv-1153RAJ
INIP-6-0006P15 DEC_MP

LOWE GRAHAM JONES℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

5.     The data collection system used by Crystal Bay has numerous components. It contains, *inter alia*: (1) a proprietary BitTorrent Client; (2) servers running a MySQL database which log verified infringing transactions; (3) packet analyzers, also known as packet sniffers, which create and analyze PCAPs; (4) servers that run the proprietary BitTorrent Client and record PCAPs; (5) WORM ("Write Once Read Many") tape drives for storing the PCAPs and MySQL server data; (6) a program to synchronize the servers' clocks with both a GPS clock and an atom clock; and (7) a proprietary program for checking the MySQL log files against the contents of the PCAPs.

6.     The BitTorrent Client used by Excipio is not commercially available and its code is a trade secret. It was written to overcome the unique challenges of entering into a massive number of BitTorrent transactions with a massive number of people without distributing data.

7.     If the servers are not synchronized with both the GPS Clock and atom clock to within one hundredth of a second the infringing transaction is not logged but instead disregarded.

8.     Every entry on the MySQL server log file correlates to a specific PCAP. Both the PCAPs and log files are saved onto WORM tape drives. There is no possibility that the information on these WORM drives can be edited. Further, each of the WORM tape drives is electronically stamped with a German government issued time stamp at least every twenty four hours.

9.     I independently reviewed the PCAPs for the following IP addresses and confirmed that the PCAPs recorded the IP addresses infringed Plaintiff's copyright by distributing pieces of data that correlate to Plaintiff's work at the exact Hit Dates and UTC times specified below:

- Doe No. 3: 98.232.34.230, 6/24/14 at 12:05:19 PM
- Doe No. 6: 67.160.31.0, 6/7/14 at 05:38:49 PM
- Doe. No. 8: 76.28.197.136, 5/20/14 at 12:28:09 AM

10.     More specifically, the monitoring system received 16,397 bytes (or 131,176 bits) of data from a computer operating behind the noted IP addresses. That data produced a unique SHA-512 hash (fingerprint) which was compared to the SHA-512 hash (fingerprint) of a part of

DECLARATION OF MICAHEL PATZER - 2
Civil Action No. 14-cv-1153RAJ
INIP-6-0006P15 DEC_MP

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Plaintiff's movie. This resulted in a 100% match. This means that the data distributed by the infringer was from a part of Plaintiff's movie.

11.    Our software has not been the subject of any adverse decision with respect to its accuracy and technical reliability in any jurisdiction in the world. To the contrary, where presented and challenged, it has been uniformly found to be accurate and reliable.

12.    No one, including myself, at Excipio has an ownership in Crystal Bay or vice versa. I do not have an ownership interest in Excipio. I am not paid for my testimony and am not entitled to any portion of any money received from a settlement or judgment in Plaintiff's favor. Plaintiff has never paid Excipio or me anything. Excipio pays me a fixed amount on a monthly basis.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED the ⎯30⎯ day of May, 2015.

_____
Michael Patzer

DECLARATION OF MICAHEL PATZER - 3
Civil Action No. 14-cv-1153RAJ
INIP-6-0006P15 DEC_MP

MP

LOWE GRAHAM JONES℠
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Exhibit "3"

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| | ) | |
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | 3:15-cv-04441-WHA |
| JOHN DOE, subscriber assigned | ) | |
| IP address 76.126.99.126, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

SKYPE DEPOSITION OF

MICHAEL PATZER

Taken in behalf of Defendant

*   *   *

October 13, 2016

3699 N.W. John Olsen Place

Hillsboro, OR 97124

Cindy M. Smith, CCR

Court Reporter

```
 1          HILLSBORO, OREGON; THURSDAY, OCTOBER 13, 2016

 2                        10:10 a.m.

 3                      *    *    *

 4                    MICHAEL PATZER

 5     called as a witness in behalf of the Defendant,

 6        having first been sworn by the Reporter,

 7                  testifies as follows:

 8          (Deposition Exhibit Number 1 marked for

 9            identification.)

10                              EXAMINATION

11   BY MR. EDMONDSON:

12       Q.   Good morning, Mr. Patzer.  Please state your

13   name and spell it for the record, please.

14       A.   It's Michael Patzer, P-A-T-Z-E-R.

15       Q.   And do you have a middle name, Mr. Patzer?

16       A.   Yes, Alfred.

17       Q.   And how do you spell that, please?

18       A.   A-L-F-R-E-D, Alfred.

19       Q.   And Mr. Patzer, where do you live?

20       A.   I live in Spain.

21       Q.   Excuse me?

22       A.   I live in Spain.

23       Q.   Spain.  And can you give the city -- the

24   address and the city where you currently reside?

25       A.   It's Mallorca.  And my private suite address?
```

Michael Patzer, 10/13/2016                    MALIBU MEDIA vs. JOHN DOE
                                                              Page 62

1    right?

2        Q.    It's not readily accessible.  Like you dump

3    it to --

4        A.    Yes.  Nothing is archived it's all actively

5    accessible.

6        Q.    Okay.  And on the monitoring system, how many

7    servers are on the monitoring system?

8        A.    If I include the tape drive or tape loader,

9    and then the type service -- because the monitoring

10   system depends on a lot of parts like described

11   before.  So if you say physical servers I would say

12   about ten.  But in virtual it's about 50.

13       Q.    And for data storage in terabytes, how many

14   terabytes?

15       A.    Data storage is offloaded to tapes to WORM

16   tape drives so there are not that big storages.  And I

17   don't know how much tapes there are.  I think it's

18   about 150 or 160 right now.

19       Q.    Okay.

20       A.    And on each tape there are one to two

21   terabytes.

22       Q.    So your WORM drives -- each WORM drive is one

23   to two terabytes?

24       A.    Yes.  It's compressed data so it depends.

25   But it's between one and two terabytes.

PCAP Survey - Exhibit 3, Pg. 000003

Exhibit "4"

# Defense Against The Dark Arts Of Copyright Trolling

Matthew Sag & Jake Haskell[*]

## Abstract

In this Article, we offer both a legal and a pragmatic framework for defending against copyright trolls. Lawsuits alleging online copyright infringement by John Doe defendants have accounted for roughly half of all copyright cases filed in the United States over the past three years. In the typical case, the plaintiff's claims of infringement rely on a poorly substantiated form pleading and are targeted indiscriminately at non-infringers as well as infringers. This practice is a sub-set of the broader problem of opportunistic litigation, but it persists due to certain unique features of copyright law and the technical complexity of Internet technology. The plaintiffs bringing these cases target hundreds or thousands of defendants nationwide and seek quick settlements priced just low enough that it is less expensive for the defendant to pay rather than to defend the claim, regardless of the merits of the claim.

We report new empirical data on the continued growth of this form of copyright trolling in the United States. We also undertake a detailed analysis of the legal and factual underpinnings of these cases. Despite their underlying weakness, plaintiffs have exploited information asymmetries, the high cost of federal court litigation, and the extravagant threat of statutory damages for copyright infringement to leverage settlements from the guilty and the innocent alike. We analyze the weaknesses of the typical plaintiff's case and integrate that analysis into a strategy roadmap for defense lawyers and *pro se* defendants. In short, as our title suggests, we provide a useful guide to the defense against the dark arts of copyright trolling.

Keywords: Copyright, Copyright trolls, Statutory damages, Litigation, Litigation strategy, Civil procedure, Pleading standards, Joinder, File-sharing, BitTorrent, Public interest litigation.

[*] Matthew Sag is a Law Professor at Loyola University Chicago School of Law and the Associate Director of the Institute for Consumer Antitrust Studies. Jake Haskell is a recent graduate of Loyola University Chicago School of Law and an attorney practicing intellectual property law in Chicago. We acknowledge the generous research funding of the Institute for Consumer Antitrust Studies at Loyola and the database access provided by LexMachina. We thank Tonja Jacobi, and Spencer Waller for their many insights and comments and Wade Formo for additional research. The views presented in this article are strictly our own. Draft dated May 24, 2017. Forthcoming in Volume 103 of the IOWA LAW REVIEW (2018). Available ssrn.com/abstract=2933200.

PCAP Survey - Exhibit 4, Pg. 000001

file sharing litigation are more interested in taking advantage of copyright law's generous statutory damages provisions to monetize little more than the assertion of infringement.[11]

Copyright litigation has increased dramatically since the BitTorrent monetization era began in 2010. As we show in Table 1, although the number of cases filed in 2010 was small, lawsuits filed against John Doe defendant made up more than 52% of copyright cases in in the United States by 2014 and 58% in 2015. The number of suits dropped slightly after Malibu Media lost a case on summary judgment in January 2016, but the rate of filing is increasing again.[12] Even so, between 2014 and 2016 copyright trolling accounted for 49.8% of the federal copyright docket. To focus more clearly on the BitTorrent Monetization era, Table 1 shows the number of copyright cases filed in U.S. district courts from 2010 to 2016 and the number and percentage of John Doe copyright cases filed in such years.

### Table 1: Copyright and John Doe Cases (2010–2016)[13]

| Year | Cases Copyright | Cases John Doe | Percent John Doe |
|------|-----------------|----------------|------------------|
| 2010 | 1,983 | 77 | 4% |
| 2011 | 2,348 | 452 | 19% |
| 2012 | 3,230 | 1,401 | 43% |
| 2013 | 3,833 | 1,776 | 46% |
| 2014 | 4,272 | 2,204 | 52% |
| 2015 | 5,079 | 2,930 | 58% |
| 2016 | 3,681 | 1,362 | 37% |

As we noted in the introduction, these figures show only cases filed, not the true number of defendants.[14] John Doe suits have named as many as 15,000 defendants, but over the past three years, almost all cases range from 1 to 50 defendants.[15] Our analysis of the federal court filing records indicates that in 2016, the average number of defendants in each of the John Doe cases was, on a conservative estimate, 4.7 overall and 8.8 excluding Malibu Media cases. In other words, although there were 1,362 John Doe copyright cases filed last year, 6,483 individual defendants were

---

[11] We invoke the triad of "plaintiffs, lawyers and litigation service providers" to reflect our uncertainty as to whether the true principals directing the current wave of John Doe are the named plaintiffs, their lawyers, or the litigation service providers who claim to identify supposed instances of copyright infringement.

[12] On Feb 8, 2016, the court granted the defendant's motion for summary judgment in Malibu Media, LLC. v. Doe, No. 1:13-cv-6312, slip op. at 8 (N.D. Ill. Sept 04, 2013). This appears to have precipitated a dispute between Malibu Media and its main litigation counsel. See Malibu Media LLC v. Lipscomb Eisenberg and Baker, PL et al, Docket No. 2:16-cv-04715 (C.D. Cal. Jun 28, 2016) (Dkt 1) (alleging professional negligence and other causes of action).

[13] Source Data: Administrative Office of the U.S. Courts, PACER records, 2010–2016. See *supra* note 9.

[14] *Supra* note 2

[15] *See e.g.,* Dallas Buyers Club, LLC v. Does 1–56, No. 1:14-cv-07044 (N.D. Ill. June 17, 2015); Countryman Nevada, LLC v. Does 1–50, No. 1:14-cv-01384 (N.D. Ill. dismissed Dec. 16, 2014); Voltage Pictures, LLC v. Does 1–50, No. 6:14-cv-00816 (D. Or. dismissed June 24, 2014).

PCAP Survey - Exhibit 4, Pg. 000002

targeted.[16] Based on these findings, our best estimate is that the number of U.S. households who have received a settlement demand letter from the plaintiffs we regard as copyright trolls during this period is in the hundreds of thousands.

Although the BitTorrent cases now dominate the federal copyright docket, there are only a handful of key players to consider. As shown in Figure 2, below, the pornography distributer Malibu Media alone accounts for 62% of the John Doe cases in the 2015–2016 period, and another five companies—LHF Productions, Manny Film, Cobbler Nevada, Plastic The Movie, and Dallas Buyers Club—collectively account for another 20%. Thus, the current wave of BitTorrent monetization lawsuits is a niche industry rather than a general response to the problem of online copyright infringement.

---

[16] By running an algorithm over the entire set of cases, we are able to determine that, at a minimum, over 170,000 IP addresses have been targeted since 2010. However, this figure significantly undercounts the number of defendants, because it only accounts for the number disclosed by the plaintiff in the title of the case. *E.g.,* "Some Film, LLC v. John Does 1–76". Some cases are captioned simply "Some Film, LLC v. John Does" and were unable to inspect each record to determine the true number of defendants.

PCAP Survey - Exhibit 4, Pg. 000003

**Table 2: Plaintiffs in Copyright John Doe Cases (2015–2016)**

| Plaintiff | Cases Filed | Percent, Cumulative |
|---|---|---|
| Malibu Media, LLC | 2646 | 61.7 |
| LHF Productions, Inc. | 225 | 66.9 |
| Manny Film, LLC | 215 | 71.9 |
| Cobbler Nevada, LLC | 208 | 76.7 |
| Plastic The Movie, Limited | 137 | 79.9 |
| Dallas Buyers Club, LLC | 110 | 82.5 |
| Me2 Productions | 82 | 84.4 |
| Criminal Productions, Inc. | 66 | 85.9 |
| Clear Skies Nevada, LLC | 66 | 87.4 |
| Good Man Productions, Inc. | 62 | 88.8 |
| QOTD Film Investment Ltd. | 40 | 89.7 |
| Fathers & Daughters Nevada, LLC | 37 | 90.6 |
| CELL Film Holdings, LLC | 35 | 91.4 |
| Glacier Films (USA), Inc. | 34 | 92.2 |
| Cook Productions, LLC | 33 | 93.0 |
| PTG Nevada, LLC | 31 | 93.7 |
| Survivor Productions, Inc. | 29 | 94.4 |
| Poplar Oaks, Inc | 23 | 94.9 |
| I.T. Productions, LLC | 19 | 95.3 |
| ELargo Holdings, LLC | 13 | 95.6 |
| Killer Joe Nevada, LLC | 11 | 95.9 |
| Automata Productions, Inc. | 11 | 96.2 |
| September Productions, Inc. | 10 | 96.4 |
| Countryman Nevada, LLC | 7 | 96.6 |
| All other plaintiffs | 140 | 99.9 |

The business model that underpins the recent explosion in copyright litigation can be reduced to a few simple steps. The basic method is as follows:

1. Monitor online file-sharing networks and collect evidence of possible infringement. For the time being, it is best to think of this as a "black box" process that produces lists of alleged infringements and associated IP addresses.[17]

2. File a complaint alleging copyright infringement by John Does identified only by their IP addresses in the appropriate federal district court.

---

[17] An Internet Protocol address is an identifier assigned to a device connected to a TCP/IP network. The IP addresses discussed in this Article are most often connected to the routers that connect consumer Internet access accounts to the internet.

PCAP Survey - Exhibit 4, Pg. 000004

Exhibit "5"

9/7/2017                     Maverickeye | Detect and Retrace Copyright Infringements



 HOME • SERVICES • FILMS • IMPRINT • DISCLAIMER • ORDERS • NEWS • CONTACT



Maverickeye UG makes it possible to detect and retrace copyright infringements with highly sophisticated software technology.

http://www.maverickeye.de/#section-contact                                    1/9

PCAP Survey - Exhibit 5, Pg. 000001

9/7/2017                                    Maverickeye | Detect and Retrace Copyright Infringements

 | 

 **HOME** • **SERVICES** • **FILMS** • **IMPRINT** • **DISCLAIMER** • **ORDERS** • **NEWS** • **CONTACT**



Maverickeye UG provides world class surveillance of your intellectual property within the most prominent Peer-to-Peer networks (e.g. Bittorrent, Emule)

Our highly trained staff is able to identify, analyze, archive and document the illegal distribution of our clients copyrighted material.

 Highly sophisticated software along, with Maverickeye UG's robust hardware infrastructure ensures quality, consistency and relevance of our data for the legal system.

 Maverickeye UG can generate analytical, statistical and graphical reports for the users Peer-to-Peer networks download.

 Maverickeye UG works very closely with several law firms focused on the protection of intellectual property and specialized in filing legal claims against people who infringe on your intellectual property.

 We can also remove pirated content from search engines and torrent sites through our takedown services. Maverickeye offers <span style="color:red">piracy analysis</span> as well as trademark and picture infringement detection.

## TAKEDOWN SERVICES

Maverickeye offers a cost-effective anti-piracy takedown service for law firms, private entities, and creative individuals. We target today's top search engines and some of the widely used torrent and fire-sharing sites on the web. Our takedown notices will remove pirates from search results and put your online marketing efforts on the top.

Call us now to get a free piracy analysis, recommendation, and strategy.

Why hire us?

- Free analysis – We can give you an obligation-free piracy quotation.

PCAP Survey - Exhibit 5, Pg. 000002





HOME  •  SERVICES  •  FILMS  •  IMPRINT  •  DISCLAIMER  •  ORDERS  •  NEWS  •  CONTACT

of the anti-piracy services we can offer. We also send takedown notices for search engines, torrent sites, ISPs, video-sharing sites, file-sharing sites, forums, advertisements, auction sites, and e-commerce sites.

Our takedown process:

- We identify the sites that contain your content.
- We conduct human verification for the sending of takedown notices.
- We send takedown notices to suspected sites.
- We monitor the sites' compliance and manage documentation reports.

*Put your website on top! Remove pirates from search engine results!*

---

## PIRACY ANALYSIS

Maverickeye offers a free and customized piracy analysis! Call us now or request a quote through the form below.

---

# FILMS

PCAP Survey - Exhibit 5, Pg. 000003

9/7/2017                                    Maverickeye | Detect and Retrace Copyright Infringements



   HOME  •  SERVICES  •  FILMS  •  IMPRINT  •  DISCLAIMER  •  ORDERS  •  NEWS  •  CONTACT

    

    

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | » |

PCAP Survey - Exhibit 5, Pg. 000004





☰        HOME  •  SERVICES  •  FILMS  •  IMPRINT  •  DISCLAIMER  •  ORDERS  •  NEWS  •  CONTACT

CEO: Thomas Nowak

Heilbronner Strasse 150

70191 Stuttgart

Germany

1. Inhalt des Onlineangebotes
Der Autor übernimmt keinerlei Gewähr für die Aktualität, Korrektheit, Vollständigkeit oder Qualität der bereitgestellten Informationen. Haftungsansprüche gegen den Autor, welche sich auf Schäden materieller oder ideeller Art beziehen, die durch die Nutzung oder Nichtnutzung der dargebotenen Informationen bzw. durch die Nutzung fehlerhafter und unvollständiger Informationen verursacht wurden, sind grundsätzlich ausgeschlossen, sofern seitens des Autors kein nachweislich vorsätzliches oder grob fahrlässiges Verschulden vorliegt.
Alle Angebote sind freibleibend und unverbindlich. Der Autor behält es sich ausdrücklich vor, Teile der Seiten oder das gesamte Angebot ohne gesonderte Ankündigung zu verändern, zu ergänzen, zu löschen oder die Veröffentlichung zeitweise oder endgültig einzustellen.

2. Verweise und Links
Bei direkten oder indirekten Verweisen auf fremde Webseiten (Hyperlinks), die außerhalb des Verantwortungsbereiches des Autors liegen, würde eine Haftungsverpflichtung ausschließlich in dem Fall in Kraft treten, in dem der Autor von den Inhalten Kenntnis hat und es ihm technisch möglich und zumutbar wäre, die Nutzung im Falle rechtswidriger Inhalte zu verhindern.
Der Autor erklärt hiermit ausdrücklich, dass zum Zeitpunkt der Linksetzung keine illegalen Inhalte auf den zu verlinkenden Seiten erkennbar waren. Auf die aktuelle und zukünftige Gestaltung, die Inhalte oder die Urheberschaft der verlinkten/verknüpften

PCAP Survey - Exhibit 5, Pg. 000005



HOME • **SERVICES** • FILMS • IMPRINT • DISCLAIMER • ORDERS • NEWS • CONTACT

responsible for the topicality, correctness, completeness or quality of the information provided. Liability claims regarding damage caused by the use of any information provided, including any kind of information which is incomplete or incorrect, will therefore be rejected. All offers are not-binding and without obligation. Parts of the pages or the complete publication including all offers and information might be extended, changed or partly or completely deleted by the author without separate announcement.

linked or referred to from his pages – unless he has full knowledge of illegal contents and would be able to prevent the visitors of his site from viewing those pages. If any damage occurs by the use of information presented there, only the author of the respective pages might be liable, not the one who has linked to these pages. Furthermore the author is not liable for any postings or messages published by users of discussion boards, guestbooks or mailinglists provided on his page.

## Copyright

The author intended not to use any copyrighted material for the publication or, if not possible, to indicate the copyright of the respective object. The copyright for any material created by the author is reserved. Any duplication or use of such diagrams, sounds or texts in other electronic or printed publications is not permitted without the author's agreement.

## Legal Force of This Disclaimer

This disclaimer is to be regarded as part of the internet publication which you were referred from. If sections or individual formulations of this text are not legal or correct, the content or validity of the other parts remain uninfluenced by this fact.

## ORDERS

PCAP Survey - Exhibit 5, Pg. 000006



HOME  •  SERVICES  •  FILMS  •  IMPRINT  •  DISCLAIMER  •  ORDERS  •  NEWS  •  CONTACT

Judgment – Dallas Buyers Club LLC v iiNet Limited [2015] FCA 317_1230230_1 (2)

Voltage Pictures vs Teksavy Reasons

Voltage Pictures vs Teksavy Order

Norwich Order Fax-Jul-28-2016-12-55-44-0399

## CONTACT

Request a free piracy analysis by filling up this form:

Name *

Email *

Other contact info

Link of your website *

PCAP Survey - Exhibit 5, Pg. 000007

9/7/2017                          Maverickeye | Detect and Retrace Copyright Infringements





HOME  •  SERVICES  •  FILMS  •  IMPRINT  •  DISCLAIMER  •  ORDERS  •  NEWS  •  CONTACT

SEND

You may also contact us through:

info@maverickeye.com
+49 (0)711 49004127





Maverickeye UG detects and retraces copyright infringements with highly sophisticated software technology.

CONNECT WITH US



TWITTER FEED

http://www.maverickeye.de/#section-contact                                                      8/9

PCAP Survey - Exhibit 5, Pg. 000008

9/7/2017                          Maverickeye | Detect and Retrace Copyright Infringements

HOME  •  SERVICES  •  FILMS  •  IMPRINT  •  DISCLAIMER  •  ORDERS  •  NEWS  •  CONTACT

Embed                                                            View on Twitter

Copyright © Maverickeye 2015. All Rights Reserved.

PCAP Survey - Exhibit 5, Pg. 000009

Exhibit "6"



MaverickEye UG • Heilbronner Str. 150 • 70191 Stuttgart

Crowell Law
Carl D Crowell
943 Liberty St SE, Salem
Oregon 97308
USA

MaverickEye UG (haftungsbeschränkt)
Heilbronnerstr. 150
70191 Stuttgart

E-Mail:    accounting@maverickeye.de

Tel:       0711 / 49004-127
Fax:       0711 / 49004-128

**Date:**    August 8, 2017
**Invoice No:**    717 0098

## Invoice / Rechnung

For the following services on August 8, 2017 in reference to case "3:15-cv-00907-AC Dallas Buyers Club, LLC v. Huszar", we calculate the following amount

| | |
|---|---|
| - Data delivery - PCAP file : (1 x $ 310.00) | 263,12 € |
| PCAP item number: **#1** | ($ 310.00) |
| *- see next page for details -* | |

| | |
|---|---|
| Amount (net) | 263,12 € |
| VAT (0.00 %) | 0,00 € |
| **Total Amount** | **263,12 €** |
| Total Amount (1 USD = 0.84878 EUR on August 7, 2017) | ($ 310.00) |

*Payment information / Zahlungsinfromation:*
- *Nicht im Inland steuerbare Leistung / No taxable service*

Geschäftsführung / CEO    Registergericht    Steuer-Nr. 99/120/02093    **Bankverbindung / Bank details**
Thomas Nowak    Stuttgart HRB 741895    **Ust-IdNr.** DE 284330158    Bank: Deutsche Postbank
                Germany        BIC: PBNKDEFF
                    IBAN: DE40 6001 0070 0879 4277 05
                    Währung/Currency: Euro

PCAP Survey - Exhibit 6, Pg. 000001



**Detailed Information**

| | |
|---|---|
| **Item Number:** | **#1** |
| **IP / Port:** | 173.11.1.241 |
| **Torrent Hash:** | F18A60DB02EC3B55C18924F47955DE766DACC537 |
| **Name:** | Dallas Buyers Club (2013) |
| **Session Start:** | 2015-05-09 00:05:47 |

**Geschäftsführung / CEO**
Thomas Nowak

**Registergericht**
Stuttgart HRB 741895
Germany

**Steuer-Nr.** 99/120/02093
**Ust-IdNr.** DE 284330158

**Bankverbindung / Bank details**
Bank: Deutsche Postbank
BIC: PBNKDEFF
IBAN: DE40 6001 0070 0879 4277 05
Währung/Currency: Euro

PCAP Survey - Exhibit 6, Pg. 000002