To:     United States District Court for the State of Oregon
From:   John Huszar
RE:     Civil Action No. 3:15-cv-00907-AC
Date:   8/16/2016

RECVD 19 AUG '16 10:52 USDC-ORP
FILED

To Whom it May Concern:

I am aware of the fact Ben Justus has filed a document with the Court, asking the Court to release him/his firm from representing me in this case.

As far as I know, the Court has not appointed another firm to represent me. Therefore, it appears I am back to representing myself in this matter, at least for the time being.

It is also my understanding there is some sort of conference call scheduled for August 22nd, 2016. Although I do not understand the purpose of this conference call, as I thought I made it perfectly clear to Mr. Justus (and asked him to convey this information to the Court) about my position and intentions, with regard to this case.

Due to the inherent nature of a person being represented by another, and the possibility for information "falling through the cracks" (so to speak) there is great potential for misunderstandings in the information communicated to the court.

Therefore I am writing this letter now, to clarify my current position with regard to this case, to review some of the facts I have already conveyed to the Court, and to provide some information which may not have been previously stated to the Court.

Although, please note, I must keep this letter as brief as possible, ~~as stress is THE main factor which contributes to me experiencing heart attack(s), and I can feel my stress level increasing as I write this letter.~~

### ~~My Health Condition(s)~~

~~After the Court ordered mediation conference, I experienced 2 heart attacks, within a couple days of each other. I promptly notified Mr. Justus about these events, and he asked me to provide documents pertaining to this heart condition.~~

~~I obtained and provided copies of health/hospital records to him, which showed this heart condition first became quite evident approximately 11 years ago, and has continued ever since. As a matter of fact, each time I experience one of these heart attacks, it serves to further weaken my heart. It appears it is highly unlikely this condition can be totally "cured".~~

EXHIBIT 2

~~These documents included details of several hospital visits (although I did not obtain documentation about ALL the hospital visits, since the documents I provided more than adequately show I have a serious medical condition), and a copy of a recent prescription, for doctor prescribed medication.~~

~~Note: In an email I received from Mr Crowell on 8/8/2016, he said~~
~~"A panic attack does not waive liability.  We can work with you to reasonably accommodate your anxiety, but we will not absolve you of liability because you have had one or more panic attacks in this action."~~

~~Let me be perfectly clear about the following points:~~

~~1. These are NOT simply "panic attacks", as (apparently) Mr Crowell wants everyone to believe. These are heart attacks.~~

~~While I have realized the effects of stress are a MAJOR contributing factor to the occurrence of these heart attacks, these are not "panic attacks".~~

~~The heart condition, from which I have been experiencing severe symptoms over the past 11 years (approximately), is commonly referred to as "Atrial Fibrillation" (as can be seen in the documents I have recently provided to the Court).~~

~~During the 1st major attack approximately 11 years ago, my heart rate suddenly climbed to over 300 BPM, and the rhythm of my heart became extremely erratic. My wife (at the time) called 911, and I was rushed to the hospital in an ambulance. I thought for sure I wasn't going to make it to the hospital. If it hadn't been for the medic in the ambulance injecting me successively with 3-4 different drugs, the last one proving to be effective at stabilizing my heart, I might not still be alive today.~~

~~In addition, as can be seen from the documents I submitted, I have been hospitalized several times since then, during the most severe occurrences of these attacks. (Note: I have had MANY attacks over the past 11 years, although I wasn't hospitalized every time. Some only last for a few minutes, while the majority of these attacks can last many hours).~~

~~During my divorce, which dragged out in court for approximately 3 years (because my ex-wife chose to handle our divorce in that manner), and the tremendous amount of stress I felt during that time, I experienced many of these episodes.~~

~~During one such major attack (after our divorce kicked into high gear) in May of 2010, I drove myself to the hospital, and the doctor convinced me to undergo a procedure known as~~

EXHIBIT 2

~~"electrical shock cardioversion".~~

~~Believe me when I say, that is not something which I intend to experience again, if I can prevent it.~~

~~While I have observed stress is a major contributing factor, this condition is also a hereditary condition. My mother had it, as well as my middle brother. And just like me, both of them were also hospitalized many times during severe episodes.~~

~~One of the major concerns with this condition is a potential for subsequent blood clotting, which may result in further detrimental events, including a stroke.~~

~~My mother experienced 2 major strokes. Shortly after the 2nd stroke, she passed away.~~

~~My middle brother suddenly passed away last year, due in part to complications from this heart condition. He even went so far as to have heart surgery (twice) in order to attempt to alleviate the number the attacks. Unfortunately, it only helped for a brief period of time, and the attacks started up again.~~

~~Make no mistake about it, this is a very serious condition, and not to be treated lightly. I know from firsthand experience, and observation of others in my family, it is most definitely life threatening.~~

~~Since stress is a major contributing factor, I choose to eliminate as much stress as possible from my life. And this case has become a great source of stress for me; because of the fact Mr. Crowell (and the Plaintiff) are being totally unreasonable.~~

~~2. I am not claiming this condition serves to absolve me of liability~~.

I do not see where I have any liability in this case, at all.

I have said this before, and I will say it again, I DID NOT DOWNLOAD the Plaintiff's movie, Dallas Buyer's Club. I had never even heard of the movie, until this complaint was filed. After the complaint was filed, I looked up the description of the movie on Netflix's web site, and it is not a movie which I want to view. I find the subject matter to be totally distasteful.

The facts, which I have presented to the Court, and to Mr. Crowell, and contained within this letter, speak for themselves.

EXHIBIT 2

~~I'm simply stating that, due to a) my health conditions, I cannot participate in this case any further, and b) due to my fairly extensive experience with court cases over the years (including my own observations and subsequent realizations during and after these proceedings) I will not participate in this case any longer.~~

~~This includes any further discovery, additional depositions, and conference calls.~~

I'm certainly NOT going to participate in a jury trial.

The only exception to the above statement is if Mr Crowell chooses to file a motion with the Court, to possibly secure a default judgment against me.

**If that occurs, I reserve the right to respond accordingly.**

**Relevant Facts**

I have already stated many of the following facts in previous documents, which Mr. Justus and I have filed with the Court. Although, this case has also dragged on now for over a year, and quite frankly I can't remember if all my points have been stated.

In addition, since Mr. Justus has represented me for over 6 months, I don't know exactly how much of the information I conveyed to him, has been accurately passed on to the Court.

Just in case, before I bring this letter to a close, I will reiterate as many points as I can remember at this moment, and which I feel are relevant:

1) Mr. Crowell represents ONE client, for ONE movie, which he claims was downloaded via one of the 5 IP addresses, which are currently assigned to my company from Xfinity/Comcast.

In addition, his observation logs allege this ONE movie was shared for a period of approximately ONE day.

~~And yet, in January of this year, he proposed I agree to pay him (and the Plaintiff) $9,500.~~

~~Later, during the Court ordered mediation conference, that figure escalated to $30,000!~~

All because this ONE movie was allegedly downloaded (and shared for about 24 hours) via one of my 5 IP addresses, via Torrent software?

**This is quite frankly, ludicrous.**

EXHIBIT 2

2) This is the most important point I will make.

Mr Crowell has ABSOLUTELY NO PROOF that I personally committed this act, nor is it very likely the identity of the actual (alleged) perpetrator can/will be established.

And here are some relevant facts, with regard to why the actual (alleged) perpetrator cannot be accurately identified:

a) I have already stated that many times in the past I have operated my Wifi Access Point in an "unsecured manner". Furthermore, the subject IP address was routed to my Wifi Access Point, until such time as I started to operate a Tor Exit Node. Note: I don't recall exactly when that change was done.

b) I have had many roommates, their guests, and my guests during the past several years (since I parted ways with my now ex-wife in 2009). Up until sometime last year, all of these roommates were allowed access to my Wifi Access Point (ie I provided them with the password). Note: None of my current roommates have had access to the Wifi. Even though the password is still the same, as it has been for years, sometime last year I enabled another security feature on my Wifi Access Point, called Mac Address Filtering.

c) I operated a Tor Exit Node for the better part of last year. (Once again, I don't remember exactly WHEN I actually put the Tor Node "online").

d) Regarding my installation of the Tor Exit Node, I have the following to add to this discussion.

~~During email and phone communications with Mr. Crowell, he DEMANDED that I cease and desist from operating said Tor Exit Node.~~

~~Note: Mr. Justus is willing to provide a sworn statement, attesting to this, if need be.~~

Even though (as far as I know) operating a Tor Exit Node is NOT illegal, I took it upon myself to cease operating the Tor Exit Node. I thought it might help resolve this case.

Co-incidentally, due to a catastrophic hardware failure on the server late last year (to which I have already provided extensive documentation and statements) on which the Tor software and Linux Virtual Machine were installed, I lost the entire Virtual Machine.

I did not attempt to save it because I was going to stop operating the Node anyway.

EXHIBIT 2

Incidentally, with regard to the loss of the VM and the installation of the Tor Software, I had a very interesting realization a couple weeks ago.

When a given individual installs a piece of software on a computer system, and then later "uninstalls" the software, the operating system software DELETES ALL THE RELEVANT FILES ANYWAY.

If I had simply issued the appropriate Linux command (ie **apt-get remove --purge**), then all the files relevant to the Tor Software would have been erased.

e) Mr. Crowell alleges I have somehow "spoiled evidence", because of the fact I lost my installation of the software and the VM.

It is my understanding, due to the way Tor is designed, it a) does not log any information, b) even if it did, those logs do not provide any useful information, because it is by design, a distributed network c) the Tor network is used by individuals across the globe, and d) most importantly, please see the following paragraph which is copied and pasted into this document from this web page:
https://www.torproject.org/eff/tor-legal-faq.html.en:

### Should I snoop on the plaintext traffic that exits through my Tor relay?

**No.** You may be technically capable of modifying the Tor source code or installing additional software to monitor or log plaintext that exits your relay. However, Tor relay operators in the United States can possibly create civil and even criminal liability for themselves under state or federal wiretap laws if they monitor, log, or disclose Tor users' communications, while non-U.S. operators may be subject to similar laws. Do not examine anyone's communications without first talking to a lawyer.

Therefore Mr. Crowell's allegation that I somehow intentionally "spoiled evidence" is completely invalid.

~~I only did what Mr. Crowell DEMANDED I do, which was to stop operating a Tor Exit Node. Furthermore, I have no intention of ever installing or operating a Tor Node again.~~

Whether I simply uninstalled the software, or deleted/lost the VM and the Tor software entirely is totally irrelevant. The end result is still the same.

e) Mr Crowell's Observation Logs only show the title, and the date of the alleged download, and an IP address.

EXHIBIT 2

They do NOT show the actual Mac Address (a unique identifier which every network and Wifi card has associated with it).

In addition, they do NOT show the identity of the person, which is running the Torrent client software (ie a login, network handle, etc).

f) Mr. Crowell maintains that it is unlikely the titles shown in his observation logs were downloaded via the Tor Network.

After closer examination, both Mr. Justus and I realized Mr Crowell's observation logs show a LARGE number of titles (movies, software etc), which are in a foreign language.

It is the opinion of Mr. Justus, and me, that it is obvious these titles were very likely (allegedly) downloaded by individuals around the globe.

~~When we brought up this point at the mediation conference, Mr. Crowell quickly discounted this fact, still claiming that I personally downloaded all these foreign language titles, which is preposterous.~~

## Other Relevant Facts

a) I have logs of my own, which show I have been a Netflix subscriber for quite some time.

Note: The subject movie, Dallas Buyer's Club is available via Netflix. So why would I download it?

In addition, my son has an HBO Go account, which he and I both use, in order to watch one of our favorite programs, Game of Thrones.

If memory serves, a few of the titles in Mr. Crowell's observation logs include episodes of Game of Thrones.

I took printouts of these logs to the deposition. I never got a chance to give them to Mr. Crowell. As soon as I (willingly) told Mr. Crowell that the Tor Software installation had been erased, pursuant to his wishes, he abruptly ended the deposition. At first it didn't make sense to me why he so abruptly ended the deposition. It later became obvious to me why he did that, when he claimed I "spoiled evidence".

EXHIBIT 2

~~I also took printouts of these logs to the mediation conference. Mr. Crowell refused to acknowledge them, most likely because these logs do not support his case.~~

b) I have been a computer programmer for over 40 years. I have extensive knowledge of many different operating systems, software, computer hardware, security protocols, and for the past couple of years, I have become keenly aware of privacy issues on the Internet/Web.

I am familiar with Torrent software, how it functions, and how it exposes the IP address of the machine running the Torrent client software.

In addition, as I have previously stated, I have operated a small ISP company since approximately 1997.

Given all the above, there is NO WAY that I would use Torrent software to download copyrighted material. I would NEVER put myself, or my company, or my clients at risk by doing that.

There are likely other facts which are relevant to this case, although these points are all I can think of at the moment.

I do reserve the right to add additional points, in the future, if Mr. Crowell chooses to file a motion to obtain a default judgment against me.

Respectfully signed,

*[signature: John Hughes]*

Date: August 16, 2016

EXHIBIT 2