Michael O. Stevens, OSB No. 095198
michael@hillsborofirm.com
STEVENS & LEGAL, LLC
3699 NE John Olsen Avenue
Hillsboro, OR 97124
Tel: (971) 533-6178
Fax: (971) 228-2608

J. Curtis Edmondson, CASB No. 236105 (*pro hac vice*)
jcedmondson@edmolaw.com
Kiren Rockenstein, OSB No. 175638
kirenr@edmolaw.com
EDMONDSON IP LAW
3699 NE John Olsen Avenue
Hillsboro, OR 97124
Tel: (503) 336-3749
Fax: (503) 482-7418

David H. Madden, OSB No. 080396
dhm@mersenne.com
MERSENNE LAW LLC
9600 SW Oak Street, Suite 500
Tigard, OR  97223
Tel: (503) 679-1671
Fax: (503) 512-6113

Attorneys for Defendant JOHN HUSZAR

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DALLAS BUYERS CLUB, LLC,** | Case No.: **3:15-cv-0907-AC** |
| Plaintiff, | DEFENDANT'S |
| v. | OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| **JOHN HUSZAR** | |
| Defendants. | FRCP 56 |

Defendant John Huszar ("Huszar") opposes Plaintiff Dallas Buyers Club, LLC's ("DBC"), motion for partial summary judgment on liability for copyright infringement. (See Dckt 122). DBC's motion should be denied as triable issues of material fact remain regarding:

- **Evidence of licenses and agreements where a reasonable factfinder could conclude DBC does not have ownership of the work when the claim was made.**

- **Proof of copyright infringement.**

- **The conclusion of "willful infringement".**

All of these issues are DBC's burden of proof at trial.  See United States Court for the Ninth Circuit Manual on Model Jury Instructions 17.5 *COPYRIGHT INFRINGEMENT— ELEMENTS—OWNERSHIP AND COPYING*[1].

DBC has failed to meet its burden under Rule 56 and this motion should be denied.

## MEMORANDUM

### I.    BACKGROUND

DBC has brought hundreds of lawsuits and has sued thousands of defendants over the use of BitTorrent.  DBC's model of litigation is known as "sue and settle".   DBC alleges infringement and hopes for a quick settlement.  When a defendant demonstrates a willingness to litigate, DBC dismisses without prejudice.  No DBC case has progressed to a jury trial. (Declaration of J. Curtis Edmondson).

### A.  Defendant Huszar running an ISP with Tor

Huszar runs a small ISP in Oregon City where he configured a "Tor Exit Relay" using IP address 173.11.1.241.  Tor exit relays serve as entry points for people on the Tor network. As such the Tor exit node would operate much like "Open Wi-Fi" so that hundreds, if not thousands, of

---

[1] http://www3.ce9.uscourts.gov/jury-instructions/node/326

people from around the world would appear to be using Huszar's IP Address.

Although Huszar was at times represented by "Pro Bono" counsel, by the time he was served with the Second Amended Complaint he was unrepresented and in poor health. (Dckts 63, 65). Huszar filed a *pro se* Answer and clearly asserted a general denial to all claims. (Dckt 71). DBC moved to strike the entire Answer (Dckt 72), which this Court partially denied, striking only those portions relating to Huszar's health and settlement negotiations between the parties. (Dckt 95).

Huszar's Answer specifically set forth facts in support of his general denial of Plaintiff's allegations, namely:

1) He operated an "open" computer system, which also acted as a Tor exit node, which was accessible to third parties via Wi-Fi, including his roommates.
2) He was "pro se" when Plaintiff's Request for Admissions were "deemed admitted." (Huszar's Answer, Dckt 71)

Huszar's position has not changed, regardless of any vague inferences DBC now seeks to exploit. Instead, Huszar has specifically and continuously denied the wrongdoing alleged by DBC. (Dckts 39, 40-2, 71).

## II.    STANDARD

As Plaintiff noted, "[t]o establish a claim of copyright infringement by reproduction, the plaintiff must first show ownership of the copyright and copying by the defendant [of that copyrighted work]." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 817 (9th Cir. 2003); see also, *Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012). When causation of the copying of that work is at issue, as is here, a plaintiff must also prove a third element by the preponderance of evidence--that defendant was close enough to the infringing event to be considered to be the most important cause.

Accordingly, DBC bears the burden of proving:

**a.**    It is the owner of a valid copyright for the work;
**b.**    Defendant copied that specific copyrighted work; and
**c.**    Defendant was at least the most important cause of the copying of that work.

The moving party, DBC, has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Conversely, to avoid summary judgment, the nonmovant, Defendant, need only designate specific facts showing that there is a genuine issue for trial." *Makaeff v. Trump Univ.*, LLC, 736 F.3d 1180, 1189 (9th Cir. 2013) (citation and quotation marks omitted). The court <u>must</u> view the evidence in the light most favorable to the nonmovant, Defendant, and draw all reasonable inferences in the nonmovant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.,* 251 F.3d 1252, 1257 (9th Cir. 2001) (emphasis added). "Where conflicting inferences may be drawn from the facts, the case <u>must</u> go to the jury." *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.,* 752 F.3d 807, 818 (9th Cir. 2014) (emphasis added)(citation and quotation marks omitted).

## ARGUMENTS

### III.    CONFLICTING EVIDENCE OF COPYRIGHT OWNERSHIP

DBC claims the Court should simply adopt the statement that DBC "owned" the movie on the date of infringement. However, there are two cases – one in Texas and one in Australia where DBC was the plaintiff, that create a triable issue of material fact on copyright ownership.

DBC bears the burden of proving it is the owner of a valid copyright ownership for the work, *Dallas Buyers Club.* In an attempt to meet this burden, DBC offered the Copyright Registration, pleadings in the record, and requests for admission that were deemed admitted while Defendant was *pro se*. However, the evidence shows there exists a dispute, rebutting the

presumption of a valid copyright.

    A.  <u>Australia lawsuit reveals relevant documents not produced in discovery here related to ownership of the right to sue for copyright infringement</u>

DBC has sued BitTorrent infringers in Australia where a case was extensively litigated.   In the DBC-Australia Case [Dallas Buyers Club LLC v iiNet Limited [2015] FCA 317], the Judge Perram made extensive factual findings regarding the ownership of the film *Dallas Buyers Club* referencing several documents, unmentioned in DBC's moving papers. Judge Perram identified and reviewed one such document, stating:

> If matters rested there it would follow that the owner of the copyright was Dallas Buyers Club LLC. The ISPs, however, submitted that if Dallas Buyers Club LLC had originally been the copyright owner then that copyright was assigned to Picture Perfect Corporation ('Picture Perfect') under a Distribution Licence Agreement dated 18 October 2012.
>
> (RJN 3, para 37)
>
> This was denied by the applicants who submitted that the agreement operated merely as an exclusive licencing arrangement. The question of whether it operated as an assignment or a licence is not, however, one which needs to be resolved.
> (id., para 38).

a "Distribution License Agreement" between Picture Perfect Corporation, dated October 18, 2012. (RJN, ₱ 37). Huszar was made aware of the existence of other copyright ownership licenses where third parties can, have, or may, assert ownership over the film. (Depo. of Michael Wickstrom, p.60:9 – 15).

Michael Wickstrom testified at a hearing in the Australian case [Depo. of Michael Wickstrom, (p. 54:22-23)] and had his deposition taken on behalf of DBC under 30(b)(6) in this case.   At Wickstrom's deposition in this matter, he called the Australian barrister "slick" and claimed he was trying to "twist his words". (Depo. of Michael Wickstrom, p. 57:12; p. 55:21). All

of this serves to raise even further questions about title to DBC as Wickstrom now disputes the holding of the Australian Court. The fact Wickstrom works for Voltage, and not for DBC, raises bigger question of who owns this film. (Depo. of Michael Wickstrom, p.32:10; p. 35:17).

Huszar requested copies of the aforementioned licenses, which DBC never produced. Without these, Huszar and Court would be left to speculate as to the true and proper owner of the specific film iteration DBC alleges Huszar copied. However, this is DBC's ultimate burden to prove. *Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 817 (9th Cir. 2003); *see also, Printex Indus*., *Inc. v. Aeropostale*, *Inc*., 676 F.3d 841, 846 (9th Cir. 2012). DBC has failed to do so in a manner that stands up to review under a light most favorable to Huszar and with all reasonable inferences being drawn in Huszar's favor.

B. DBC-TX, DBC-CA, and Truth Entertainment sued Voltage and assert Truth Entertainment own the move *Dallas Buyers Club*

Furthermore, in a 2015 filing in Texas, DBC-TX, DBC-CA, and Truth Entertainment, Plaintiffs in that case, asserted that Truth Entertainment was the owner of DBC. See *Dallas Buyers Club, et. al vs. Voltage Pictures, et.al,* Cause Number 15-06-060-49, 2015, attached as RJN 2. ("Texas Complaint"). The Texas Complaint stated:

> Truth Entertainment, LLC ("Truth") is a Texas movie production company based in The Woodlands, Texas. Joe D. Newcomb is the Chairman and CEO of Truth. Truth is the owner, and was a producer, of the movie Dallas Buyers Club. (RJN, p. 2)

This creates another triable issue as to ownership of the right to sue for copyright infringement. Odder still are two independently organized legal entities named Dallas Buyers Club, LLC[2] apparently in two separate states – California and Texas.

---

[2] The Copyright Certificate does not indicate which entity is the owner, leaving further ambiguity to ferret out.

Judicial estoppel should act to make a determinative fact showing issues as to DBC's right to sue for copyright infringement. Judicial estoppel is an equitable doctrine that prevents a litigant from playing fast and loose with the facts. The Ninth Circuit in *Ryan* laid out this doctrine very clearly. *Ryan v. Editions Ltd. W., Inc.,* 786 F.3d 754, (9th Cir. 2015):

> Judicial estoppel is an equitable doctrine that the court has discretion to invoke to prevent a litigant from taking contradictory positions. Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990). The doctrine is "intended to protect against a litigant playing 'fast and loose with the courts.' " Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council, 851 F.2d 1208, 1210 (9th Cir.1988). "The emphasis is not on a hard and fast rule, but rather on prevention of 'intentional self-contradiction ... as a means of obtaining unfair advantage.' "
>
> *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984) (quoting *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)

In the case at bar, because of facts established in other courts, there is a genuine issue as to whether or not DBC owns the right to sue for copyright infringement. The presentment of only the copyright certificate (one that is not actually in evidence as there is no attestation as to if the one presented is a true and correct copy) simply does not prove DBC still owns the copyright. Due to facts established elsewhere, this translates into a disputed issue of material fact regarding ownership. As such, the ability for DBC to sue is not established, and thus a triable issue exists.

## IV.    HUSZAR'S ANSWER AND GENERAL DENIAL

Huszar's Answer operated as a general denial under FRCP Rule 8(b)(3).  The rule on general denials is:

> Federal Rule of Civil Procedure 8(b)[7] allows a party to contest the particulars of a complaint simply by issuing a general denial in a responsive pleading. *See* 5 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1265 (3d ed.2004), at 546-47 ("Wright & Miller") ("No prescribed set of words need be employed in framing the general denial;

any statement making it clear that the defendant intends to put in issue all of the averments in the opposing party's pleading is sufficient.").

*In re Sterten*, 546 F.3d 278,283 (3rd Cir. 2008)

DBC's reading of FRCP 8(b)(6) ignores the language in FRCP 8(b)(3). Huszar preserved a general denial through his eight page Answer filed at Docket 71. Pages 5-8 of the Answer are very emphatic regarding his denial of liability and the reasons why. Answers are to be read broadly in a manner that does not prejudice the other party. *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983). DBC cannot claim prejudice because they already moved to strike the Answer which was denied except for health and settlement facts.

## V.    FACTS ESTABLISHED BY THE REQUESTS FOR ADMISSIONS

### a.    Infringement is not established by default admissions that are overly broad and further do not address the required element of originality

DBC has offered requests for admissions (RFA) deemed admitted to prove: (1) there are no genuine disputes of material fact as to liability, and (2) that Huszar willfully infringed the specific film they purport to hold a copyright to. However, these admissions are largely irrelevant or lack sufficient *specificity* to support either of DBC's contentions. The admissions equally fail to meet DBC's ultimate burden to prove it is the valid owner of a copyrighted work; Huszar infringed that specific copyrighted work, or even that if the infringement was indirect, that Huszar was close enough to the act to be considered the most important cause.

However, the conclusion of law "copyright infringement" cannot be determined by an RFA as the RFAs eliminate the essential element of proof, that the part copied was "original". RFAs that are conclusions of law are improper as a matter of law; See *Playboy Enterprises, Inc v. Welles* 60 F. Supp 2d 1050; also see *Benson Tower Condo. Owners Ass'n, an Or. Nonprofit Corp. v. Victaulic Co.*, 105 F.Supp.3d 1184,1196 (D. Or. 2015) stating *Tulip Computers Int'l, B.V. v. Dell*

*Computer Corp.,* 210 F.R.D. 100, 108 (D. Del. 2002) ("holding that "determining whether a patent is valid would call for a legal conclusion although dependent on factual inquiries").

While the admissions may narrow the facts for the jury to consider, DBC did not submit the obvious smoking-gun request for admission--Admit Defendant infringed the film *Dallas Buyers Club* on the date specified in the complaint. Instead, the requests largely focus on irrelevant concerns or general vagaries. The specific requests at issue are:

i.    Admit that defendant John Huszar has used the BitTorrent protocol for the exchange of
      files with others in violation of U.S. copyright law

Even if deemed admitted, this admission does not directly speak to any of DBC's ultimate issues, which are establishing: (1) copyright ownership of a work; (2) direct infringement of that work, or (3) at least being the most important cause of indirect infringement of that work.

At most, DBC can attempt to draw an inference in their favor here—that Defendant may have infringed their work. However, such would be wholly inappropriate at present. This admission must be viewed in the light most favorable to the Defendant—that Defendant did not infringe the specific work DBC claims ownership to. As conflicting inferences can be drawn from this proffered fact, it simply highlights a genuine dispute of material fact that must go to a jury.

ii.   Admit that prior to the filing of this suit John Huszar was familiar with the use of
      BitTorrent for the downloading of media

This admission is also wholly irrelevant to any of DBC's ultimate issues and at best can again only be used as a loose inference in their favor here—that because Defendant was familiar with using BitTorrent for downloading media, he may have infringed their work. However, the same application of law applies here as above. This admission must be viewed in the light most favorable to Defendant—that Defendant did not infringe the specific work DBC claims ownership to. As conflicting inferences can be drawn from this proffered fact, it again highlights a genuine

dispute of material fact.

iii.    <u>Admit that John Huszar, without permission or consent of the authors, willfully copied and distributed multiple copyrighted files through a public peer-to-peer network</u>

Unless those works are owned by DBC and claimed as part of the infringement in the suit, this is simply irrelevant. Not to mention, since it only mentions authors and not the copyright holders, we have no idea as to whether or not Huszar had a license, nor what works these were.

iv.    <u>Admit that John Huszar, without permission or consent of plaintiff copied and distributed at least portions of the motion picture Dallas Buyers Club through a public BitTorrent network</u>

While at first blush this request may appear facially relevant and significant to DBC's stance, it does not hold up to review in the light most favorable to Huszar. Wholly unspecified and left up to inference are such things as intent, proximity to the copying, and the actual thing being copied and distributed. This admission is fully applicable to any of the following plausible scenarios: (1) admitting Huszar copied and distributed a trailer to the motion picture *Dallas Buyer Club* through a public BitTorrent network; (2) admitting Huszar copied and distributed portions of the film that are uncopyrightable (black screen in the credits). More importantly, it does not specify on what time and date alleged in the complaint, that infringement has not been acted upon by DBC.

As noted above, for the purpose of DBC's Motion, this admission must be viewed in the light most favorable to Huszar. As such, it serves to only provide vague inferences. Conversely, Huszar has repeatedly and specifically denied on the record, including his Answer, the specific wronging alleged by DBC. (Dckts 39 to 40-2, 72). For these reasons, this purported evidence only serves to further highlight a genuine dispute of material fact and illustrate that DBC lacks sufficient evidence to meet its burden of proof.

**b. Willfulness cannot be proven when it is clear that Tor and open Wi-Fi was involved**

DBC has taken the extraordinary step of also seeking summary judgment for a finding of willful infringement. However, willfulness as a conclusion of law also cannot be determined by an RFA (see above).  As for the factual elements that would lead a party to a proof of willfulness, DBC's moving papers do not have sufficient facts that show Huszar's "state of mind" regarding willfulness.

As noted by DBC, "a finding of 'willfulness' in this context [Under the Copyright Act] can be based on either 'intentional' behavior, or merely 'reckless' behavior." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citations omitted). "To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)).

Notably, a determination of willfulness requires an assessment of a defendant's state of mind. "Questions involving a person's state of mind ... are generally factual issues inappropriate for resolution by summary judgment." *F.T.C. v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1139 (9th Cir. 2010) (quoting *Braxton – Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)).

It is important to reiterate that in the context of its motion, DBC bears the burden of establishing the absence of genuine disputes of material facts. Moreover, in doing so, all facts offered by DBC must be construed in the light most favorable to Huszar and any conflicting inferences highlight disputed facts that must go to a jury, as set forth in the preceding section.

To support its request for a finding of willful intent, DBC has proffered general admissions

deemed admitted against a *pro se* party. Huszar invites the Court to simply review those "smoking gun" admissions at their face value and in the light most favorable to Huszar, while noting the many conflicting inferences they serve to highlight. Huszar notes these admissions, even if taken at face-value, serve only to provide vague, generalized inferences, or are completely irrelevant to the ultimate issues. As such, DBC's request to find willful infringement is wholly undermined by its very own purported evidence and must be denied by operation of law.

Further cutting against DBC's assertion of Huszar's willful copyrighting is the very nature of how Tor operates. Potentially thousands of people could have downloaded assorted media through Huszar's Tor network and Wi-Fi. For example:

      i.      A Tor exit node would give the appearance that Huszar was doing the downloading

      ii.     A open Wi-Fi would give the appearance that Huszar was doing the downloading

However, no investigation was done or presented by Plaintiff on any backup drives or other computers that would indicate the volume of downloading

It is DBC's burden to prove Huszar's actual intent, reckless disregard for, or willful blindness to the copying of the specific iteration of the work they assert ownership to. *See In re Barboza,* 545 F.3d 702, 707 (9th Cir. 2008), *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.,* 658 F.3d 936, 944 (9th Cir. 2011). Moreover, in the context of DBC's motion, all evidence must be viewed in the light most favorable to the nonmoving party, with any contradictory inferences arising only serving to highlight issues unfit for summary judgment. (*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001), *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.,* 752 F.3d 807, 818 (9th Cir. 2014)).

In view of the evidence presented and equally plausible alternative circumstances, DBC failed to produce evidence that could rise to the high standard of willful intent, let alone meet the

burden of proof placed on parties moving for summary judgment on such an issue.

### c.  Triable Issues of Fact Exist as to Plaintiff's "Experts" and Monitoring Software

In DBC's Initial Disclosures and subsequent interactions, it has been made clear DBC intends to rely on the testimony of such parties as Daniel Macek and Ben Parino from MaverickEye UG to provide expert opinions about the monitoring software involved in this matter and to support the veracity of DBC's investigations. Mr. Parino is also expected to profess developing the monitoring software used to purportedly observe the alleged copyright infringement. However, both parties have previously been found to lack the qualifications, experience, education, and licenses to offer such forensic or expert testimony. (Exhibit 4, at paragraphs 3-4).

### VI.    HUSZAR DENIES THE WRONGDOING ALLEGED BY DBC

Huszar has repeatedly and directly denied the wrongdoing DBC alleges. (Dckts 39 to 40-2, 72). In an effort to indicate otherwise, DBC seeks to draw inferences from general admissions to both supersede Huszar's direct, repeated denials <u>and</u> to prove the absence of genuine dispute on the issue of liability.

For the obvious reasons, Huszar's repeated, direct denials trump mere inferences. This fact is further compounded when the deemed admissions are examined at face value. DBC's stance is only tenable in the event the admissions are taken in the light <u>least</u> favorable to Huszar and <u>most</u> favorable to DBC, a position expressly barred by application of law.

### VII.    SUMMARY JUDGMENT WOULD BE INAPPROPRIATE, INEQUITABLE, AND RUN COUNTER TO PUBLIC POLICY AND LEGAL STANDARDS

As noted by DBC, there have been several counsel on this matter, and Huszar was *pro se*

at the time DBC's requests for admission were ultimately deemed admitted. When present counsel joined this matter, it raised an inquiry into requesting to withdraw or amend those admissions under FRCP 36(b). This Court advised against doing so, as it did not wish to relitigate issues at that time, as a matter of judicial efficiency. However, in addition to judicial efficiency, there is a second essential, mandatory prong when assessing appropriateness. As discussed in *Conlon v. U.S.*, 474 F.3d at 622:

> Admissions are sought, first, to facilitate proof with respect to issues that cannot be eliminated from the case and, second, to narrow the issues by eliminating those that can be. *Id.* advisory committee note. The rule [36(b)] is not to be used in an effort to "harass the other side" or in the hope that a party's adversary will simply concede essential elements. *Perez v. Miami-Dade County,* 297 F.3d 1255, 1268 (11th Cir. 2002). **Rather, the rule seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice**. *See* Fed.R.Civ.P. 36(b) advisory committee note. **Thus, a district court must specifically consider both factors under the rule before deciding a motion to withdraw or amend admissions**. (Emphasis added).

In addition to these two mandatory factors, other factors may also be considered, "including whether the moving party can show good cause for the delay." *Conlon*, 474 F.3d at 625. In this instance, Huszar was advised to not submit a 36(b) motion, with no commentary concerning truth-seeking or good cause to do so. Should this interaction prove to be critical to this motion, the interests of justice and public policy would not be served.

## VIII.    IN THE ALTERNATIVE, ADDITIONAL DISCOVERY SHOULD BE ALLOWED UNDER RULE 56(d) BEFORE JUDGMENT IS GRANTED

When facts are unavailable to the nonmovant party that render it unable to present facts essential to justify its position, the court may allow time for additional discovery. FRCP 56(d). Here, questions of fact remain as to:

a. The accuracy, reliability, and nature of to the "Bittorrent Monitoring System"

supposedly created and used to conduct investigations by DBC's self-professed "experts" from MaverickEye UG, whose credibility is disputed. (Exhibit 4, at paragraphs 3-4).

      **b.**   The accuracy, reliability, and veracity of the investigatory data produced by or from MaverickEye UG's purported "Bittorrent Monitoring System", which allegedly shows forensic proof of infringement but whose credibility is disputed. *Id*.

      **c.**   The specific distinction between the reference copy, alleged infringed copy, and depository copy of the film *Dallas Buyer's Club*. The copy provided to MaverickEye UG's to conduct its investigation has an encoding date a full ten (10) days prior to the public DVD release. Thus, which specific work or iteration was MaverickEye UG actually tracking?

      **d.**   Other copyright ownership licenses for the film *Dallas Buyer's Club* have surfaced, where third parties rather than DBC can, have, or may assert ownership of the film. (Depo. of Michael Wickstrom (01/09/2018), p.60:9 – 15).

      **e.**   Huszar requested copies of the aforementioned licenses, which DBC has yet to produce. Without these, Huszar and the Court would be left to speculate as to the true and proper owner of the specific film iteration Plaintiff alleges Defendant to have copied, which is Plaintiff's ultimate burden to prove. (*See* Dallas Buyers Club LLC v iiNet Limited [Ex 3]; *Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 817 (9th Cir. 2003); *see also, Printex Indus*., *Inc*. *v*. *Aeropostale*, *Inc*., 676 F.3d 841, 846 (9th Cir. 2012).

With the current existence of so many remaining unknowns, Huszar is unable to present essential facts for its case.[3] Likewise, DBC cannot be said to have yet met its ultimate burden of persuasion for proving copyright infringement, let alone willful infringement.

---

[3] As the transcripts to the FRCP 30(b)(6) depositions demonstrate, DBC did not attend and participate in these in good faith. Mr. Young knew little for the topics he was designated for, and Mr. Wickstrom's deposition was filled with improper object after improper objection. Huszar is willing to lodge those transcripts with the Court if requested.

**CONCLUSION**

Huszar repeatedly and continuously denied the wrongdoing DBC alleges. Meanwhile, DBC's proof of copyright ownership is muddied, and its key evidence for proving liability and willfulness, are deemed admissions obtained against a *pro se* witness.

This evidence cannot be interpreted and stretched as DBC's hopes, as such inferences must instead be viewed in the light most favorable to Huszar. In that light, DBC has failed to establish its ultimate burden of proving copyright infringement; failed to produce facts that stand up to scrutiny, and has otherwise done little more than highlight the ongoing disputes between the parties concerning ultimate issues.

Therefore, DBC's request for partial summary judgment should be denied. In the alternative, Huszar should be allowed additional discovery, namely the production of the chain of title with all mortgages and assignments as well as the production of a proper FRCP 30(b)(6) designee on the topics requested by Huszar.


DATED: January 19, 2018                    Respectfully submitted,

                                           STEVENS & LEGAL, LLC

                                           /s/ Michael O. Stevens
                                           Michael O. Stevens, OSB No. 095198
                                           michael@hillsborofirm.com
                                           Attorney for Defendant