UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DALLAS BUYERS CLUB, LLC, | Case No. 3:15-CV-00907-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| JOHN HUSZAR, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

In this lawsuit, plaintiff Dallas Buyer's Club, LLC ("Dallas"), alleges defendant John Huszar ("Huszar") engaged in copyright infringement in violation of the Copyright Act (17 U.S.C. §§ 101-1332) (the "Act"). Dallas seeks both a permanent injunction against Huszar and an award of statutory damages, plus attorney fees and costs. Currently before the court are Dallas's motion for

partial summary judgment on the issues of liability and willfulness, and Huszar's subsequent motion for summary judgment on all claims.

The court finds the admissions resulting from Huszar's failure to deny allegations in the operative complaint or respond to requests for admissions clearly establish Huszar willfully infringed on Dallas's copyrighted material in violation of the Act. Accordingly, Dallas's motion for partial summary judgment should be granted and Huszar's motion for summary judgment should be denied as moot.[1]

*Background*

Dallas filed this lawsuit on May 27, 2015, against a "Doe" defendant, identified only by a specific Internet Protocol address ("IP Address") allegedly used to download a motion picture entitled *Dallas Buyers Club* (the "Movie").[2] Shortly thereafter, this court granted Dallas's *ex parte* motion to expedite discovery to determine the identity of the account holder assigned the IP Address. Comcast offered Integrity Computer Services ("Integrity"), a corporate entity, as the subscriber associated with the IP Address. Dallas attempted to contact Integrity by sending several letters, which were eventually returned as undeliverable. In early August 2015, Dallas identified Huszar as the registered agent for Integrity. Thereafter, Dallas attempted to communicate with Huszar, rather than with Integrity.

---

[1]Neither party requested oral argument on Dallas's motion for partial summary judgment and Huszar requested oral argument in his motion for summary judgment. The court finds these motions appropriate for disposition without oral argument, pursuant to LR 7-1(d)(1), and denies the request.

[2]To the extent the court relies on general background information summarized in prior Findings and Recommendations, citations to the record found therein are not repeated here.

PAGE 2 – FINDINGS AND RECOMMENDATIONS

On October 7, 2015, Dallas filed its First Amended Complaint identifying Integrity as the defendant and successfully served Integrity on October 14, 2015. Integrity moved to dismiss the First Amended Complaint two weeks later. In light of Dallas's expressed intent to amend its complaint a second time, the court denied Integrity's motion to dismiss on December 18, 2015. Shortly thereafter, the court appointed counsel to represent Integrity, allowing appointed counsel to request termination of the appointment if it required more than five hours of time. Counsel accepted the pro bono appointment on January 4, 2016. Dallas filed an motion to file a second amended complaint on February 26, 2016.

In a Findings and Recommendation dated April 29, 2016 ("F&R I"), the court recommended granting Dallas's motion to amend its complaint to substitute Huszar as defendant with regard to claims for direct and indirect copyright infringement, and to add facts purporting to show spoliation, but denying Dallas's motion to assert a claim for failure to register. *Dallas Buyers, LLC v. Integrity Computer Servs.*, Civ No. 3:15-cv-00907-AC, 2016 WL 3085907 (D. Or. April 29, 2016). Judge Simon adopted F&R I in its entirely on May 31, 2016. *Dallas Buyers, LLC v. Integrity Computer Servs.*, Civ No. 3:15-cv-00907-AC, 2016 WL 3085899 (D. Or. May 31, 2016).

Dallas served discovery requests on Huszar effective April 12, 2016. Dallas asked Huszar to respond to numerous requests for admissions, specifically asking Huszar to admit:

(1) the Movie contains original material that is copyrightable under the Act;

(2) the Movie is currently offered for sale;

(3) the Movie is discernable as a professional work;

(4) he used BitTorrent for the exchange of files in violation of the Act;

(5) he was familiar with the use of BitTorrent for downloading media before this lawsuit was filed;

(6) he "willfully and copied and distributed multiple copyrighted files through a public peer-to-peer

network" without permission or consent;

(7) he copied and distributed a portion of the Movie through BitTorrent without Dallas's permission or consent;

(8) he "willfully, intentionally and irretrievably deleted all records in his possession of any activity occurring through" the IP Address in January 2016;

(9) he "took efforts to preserve other data on the physical machine that had access to [the IP Address] and preserved the data on the physical machine, irretrievably deleting only those portions that had access to [the IP Address]";

(10) "in the 2015 calendar year, only one physical computer or virtual machine had access" to the IP Address and he destroyed all records of activity on the IP Address; and

(11) prior to April 1, 2015, he "was aware that the TOR network was used for criminal activity, including the infamous 'Silk Road' black market known for its illegal trafficking."

(Pl.'s Mot. to Compel Resps. or Deem Admiss. Admitted, ECF No. 77 ("Mot. to Compel") Ex. 1.) On May 23, 2016, more than thirty days after the requests for admissions were served but before Huszar responded to the requests, the court granted Huszar's request to stay discovery up to and including July 7, 2016, based on Huszar's poor health (the "Stay Order"). (Order dated May 23, 2016, ECF No. 58.)

Dallas filed its Second Amended Complaint on July 7, 2016 (the "Complaint"). In the Complaint, Dallas alleges it is the registered copyright holder of the Movie. (Second Am. Compl., ECF No. 63 ("Compl.") ¶¶ 5-7.) Dallas claims Huszar, as sole shareholder of the now dissolved Integrity and currently under the assumed business of Designer Visuals, is responsible for the IP Address observed to infringe the Movie, as well as a number of other copyrighted titles. (Compl. ¶¶ 12, 14-16.) Dallas asserts Huszar willfully, intentionally, and in disregard of Dallas's rights, copied and distributed the Movie through a public BitTorrent network, or permitted, facilitated and promoted the use of the internet to download and share the Movie. (Compl. ¶¶ 20-22, 30-35.) Moreover, the Complaint alleges Huszar "willfully and intentionally deleted the contents of the single computer" with access to the IP Address used to infringe the Movie, even after receiving notice of this lawsuit. (Compl. ¶¶ 18-19.)

After expending nearly fifty hours on this litigation, Huszar's pro bono counsel requested termination of the appointment, which request was granted at a July 21, 2016 telephonic hearing. The court set another hearing for August 22, 2016, directed pro bono counsel to contact Huszar of the conference, and suspended all other court management deadlines pending the hearing.

On August 19, 2016, Huszar, who was then appearing *pro se* again, filed a "To Whom It May Concern" letter, which the court treated as an answer to the Complaint (the "Answer"). In the Answer, Huszar informed the court of his poor health, the effect of the litigation on his heart condition, and matters related to mediation. (Answer, ECF No. 71, at 1-4.) He denied downloading the Movie and intentionally destroying evidence, and explained he operated his "Wifi Access Point" in an "unsecured manner," operated a Tor Exit Node, and had many roommates and guests to whom he provided the password for his "Wifi Access Point." (Answer at 3, 5-6.) Huszar represented he

"will not participate in this case any longer," which expressly included "any further discovery, additional depositions, and conference calls," and was "certainly NOT going to participate in a jury trial." (Answer at 4.) Subsequently, Huszar failed to participate in the August 22, 2016 hearing. On September 3, 2016, Dallas moved to strike the Answer and for sanctions based on Huszar's spoliation of evidence ("Motion to Strike"). Ten days later, Dallas moved to compel responses to the requests for admissions served on April 12, 2016 ("Motion to Compel").

In the Motion to Compel, Dallas asserted Huszar was more than thirty days delinquent in responding to the requests for admissions assuming the deadline was thirty days from the end of the discovery stay, or July 7, 2016. Despite offers of reasonable accommodation from Dallas, Huszar failed to meaningfully respond to the outstanding requests or Dallas's attempts to communicate, which was consistent with his express representation he did not intend to participate in this case any longer, including discovery. As a result of Huszar's failure to participate in the discovery process, Dallas requested a court order deeming the requests for admissions fully admitted. Huszar did not respond in any way to the Motion to Compel. By order dated October 11, 2016, the court granted the Motion to Compel and held the requested admissions were "deemed fully admitted based on the lack of any response by Defendant Huszar." (Order dated October 11, 2016, ECF No. 84.)

On December 28, 2016, the court issued a Findings and Recommendation addressing the Motion to Strike ("F&R II") recommending the request to strike the Answer in its entirety be denied. *Dallas Buyers, LLC v. Huszar*, Case No. 3:15-cv-00907-AC, 2016 WL 11187248, at *3 (D. Or. Dec. 28, 2016). The court found Huszar's emphatic and unambiguous denial he downloaded the Movie satisfied the requirements of an Answer and were proper, but recommended the motion to strike matters related to Huszar's health and court-ordered mediation be granted. *Id.* at*4. With regard

to Dallas's request for sanctions based on spoliation of evidence, the court found Huszar destroyed relevant evidence two months after receiving notice of the pending lawsuit, which created an obligation to preserve the evidence, and acted with the intent necessary to support sanctions and such spoliation prejudiced Dallas's ability to identify the actual infringer. *Id*. at *4-*6. The court then weighed the relevant factors and recommended imposing the severe sanction of entry of default, finding lesser sanctions would not adequately remedy the extreme prejudice suffered by Dallas as a result of Huszar's actions. *Id*. at *6 -*8.

In an opinion filed February 6, 2017, Judge Simon adopted F&R II in part. *Dallas Buyers, LLC v. Huszar*, Case No. 3:15-cv-00907-AC, 2017 WL 481469 (D. Or. Feb. 6, 2017). He agreed the Answer contained denials of allegations in the Complaint and was a proper answer, the allegations related to Husza's medical issues and mediation should be stricken, and Huszar intentionally destroyed relevant evidence while under an obligation to preserve it. *Id*. However, Judge Simon found the sanction of entry of default too severe and determined an adverse jury instruction was warranted. *Id*. at *4-*5. Specifically, Judge Simon ordered any jury considering the merits of this lawsuit be instructed: "Defendant John Huszar has failed to preserve computer hard drives that may have contained evidence relevant to this case. You may presume that the lost evidence was favorable to Plaintiff. Whether this finding is important to you in reaching a verdict in this case is for you to decide." *Id*. at *5.

Dallas filed a motion for partial summary judgment on liability and willfulness on November 14, 2017, relying primarily on the Complaint, the Answer and the deemed admissions. Two weeks after Dallas's partial summary judgment motion was fully briefed, Huszar filed his own motion for summary judgment asserting Huszar acted as an internet service provider and was entitled to

PAGE 7 – FINDINGS AND RECOMMENDATIONS

absolute immunity under 17 U.S.C. §§ 512(a) and (b), Dallas failed to produce a true and correct depository copy of the Movie, and the torrent monitoring system used by Dallas was unreliable.

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2018). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn,

summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2018). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

I. Dallas's Motion for Partial Summary Judgment

Dallas alleges claims for direct and indirect copyright infringement against Huszar in the Complaint. In its motion for partial summary judgment, Dallas seeks a determination Huszar engaged in direct copyright infringement. Additionally, Dallas asks the court to find such infringement was willful.

To establish a claim for direct copyright infringement, the plaintiff "must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). In other words, a plaintiff must establish: "(1) ownership of a valid copyright and (2) copying by the defendant of protectable elements of the work." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999). No finding related to intent, including willfulness, is needed establish a *prima facie* claim of copyright infringement. Only upon proving the existence of a viable copyright infringement claim

does willfulness become relevant for purposes of demonstrating a right to increased statutory damages or attorney fees. *Hearst Corp. v. Stark*, 639 F. Supp. 970, 979 (N.D. Cal. 1986); *see also* 17 U.S.C. §§ 504(c)(2), 505 (2018).

/ / / / /

/ / / / /

### A. Ownership of Movie Copyright

Ownership of a copyright is a primary question in a copyright infringement action. In the Complaint, Dallas alleged it was the "registered copyright holder" of the Movie and "the proprietor of copyrights and related interest need to bring suit," and the Movie "has been registered with the United States Copyright Office" by Dallas as Registration No. PA 1-873-195 and "contains wholly original material that is copyrightable subject matter" under the Act. (Compl. ¶ 5, 7-9.) Dallas asserts Huszar's failure to deny these allegations in the Answer deems these allegations admitted. Huszar contends the Answer should be construed as a general denial of all allegations in the Complaint.

"In responding to a pleading, a party must . . . admit or deny the allegations asserted against it by the opposing party." FED. R. CIV. P. 8(b)(2) (2018). Where the party may in good faith deny all of the allegations, they may do so by way of a general denial. FED. R. CIV. P. 8(b)(3) (2018). "A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted." *Id*. "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." FED. R. CIV. P. 8(b)(6) (2018).

In the Answer, Huszar specifically denies he downloaded the Movie or other copyrighted material, or intentionally "spoiled evidence." (Answer at 3, 6, 8.) He does not, and could not in good faith, generally deny all of the allegations in the Complaint as it is clear this court has subject matter jurisdiction over this lawsuit and Huszar is a resident of Oregon. (Compl. ¶¶ 2, 12.) Consequently, the Answer is not a general denial. As Huszar was obligated to respond to the Complaint, his failure to deny Dallas's actionable copyright interest in the Movie must be viewed as an admission. *Burlington N. R.R. Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996)("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually.").

Even assuming Huszar has not admitted Dallas owns a copyright in the Movie, the registration of a copyright certificate creates a presumption of validity, as well as ownership. Section 410(c) of the Act provides: "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." The Movie was completed in November 2013 and Dallas registered its copyright in the Movie effective November 13, 2013. (Pl.'s Mot. for Partial Summ. J., ECF No. 122 ("Pl.'s Mot."), Ex. 3.) Such registration identified Dallas as the author of the entire Movie, and included "all other cinematographic material," excluding only the script/screenplay and pre-existing music. (Pl.'s Mot. Ex. 3.) Dallas initiated this action within five years of the issuance of the Certificate and is, therefore, entitled to a presumption of ownership of an actionable interest in the Movie.

With this presumption established, the burden shifts to Huszar to rebut Dallas's claim of ownership. "To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003) (quoting *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997)).

In rebuttal, Huszar offers two cases in which he claims Dallas's ownership of the Movie was disputed. The first case is *Dallas Buyers Club LLC v iiNet Limited* [2015] FCA 317 (Austl.), in which the Federal Court of Australia considered whether a licensing agreement divested Dallas of its copyright interest in the Movie. First, the court applied Australia statutes and law, making any findings irrelevant to this matter. Second, the court expressly found Dallas "was the original copyright owner" and "owned the copyright on the release of the Movie." *Id*. at ¶¶ 35, 47. Finally, the licensing agreement alleged to operate as an assignment of Dallas's copyright was limited to a specific territory and not material to Dallas's copyright interest in the United States.

The second case is *Dallas Buyers Club, LLC v. Voltage Pictures, LLC*, Cause No. 15-06-06049, in the District Court of Texas for the County of Montgomery. Huszar offers a copy of the complaint filed June 12, 2015, which alleges co-plaintiff Truth is the owner of the Movie and Dallas was an investor. However, the complaint also contains allegations that Dallas entered into an agreement with the defendant to act as its agent to enforce Anti-piracy actions, implying Dallas had copyright interests defendant could enforce.

The court finds Huszar failed to present evidence rebutting the presumption Dallas has a protected copyright interest in the Movie. As a result, Dallas has established, as a matter of law, both

through the deemed admissions and the unrebutted presumption, it has a valid and enforceable copyright interest in the Movie.

  B. *Copying of the Movie*

The second element a plaintiff must prove is the defendant copied protected elements of the work. In so doing, a plaintiff may not rely solely on registration of the internet protocol address associated with the infringing activity to the defendant to establish the defendant himself violated the plaintiff's exclusive rights. *See, e.g., AF Holdings LLC v. Rogers*, No. 12-cv-1519-BTM-BLM, 2013 WL 358292, at *2 (S.D. Cal. Jan. 29, 2013). Indeed, "just because an IP address is registered to an individual does not mean that he or she is guilty of infringement when that IP address is used to commit infringing activity." *Id*. In fact, the increased popularity of wireless routers makes it "even more doubtful that the identity of the subscriber to an IP address correlates to the identity of the infringer who used the address . . . 'different family members, or even visitors, could have performed the alleged downloads." *Id*. (citing *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012)). Thus, a plaintiff must provide more than "an allegation that an IP address is registered to an individual." *Id*. at 3. *See also Cobbler Nevada LLC v. Gonzales*, 901 F.3d 1142, 1147-48 (9th Cir. 2018) (identifying and named IP address holder is not sufficient to state a claim for copyright infringement).

Dallas relies on the deemed admissions as evidence Huszar copied protected elements of the Movie. Huszar contends the request for admissions improperly contained conclusions of law and

the admissions, viewed in a light most favorable to him, fail to establish he copied any original work.³

Rule 36 of the Federal Rules of Civil Procedure ("Rule 36") governs requests for admissions and provides: "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or attorney." FED. R. CIV. P. 36(a)(3) (2018). Admitted matter is "conclusively established" in the absence of a court order allowing the admission to be withdrawn or amended. FED. R. CIV. P. 36(b) (2018). "Unanswered requests for admissions may be relied on as the basis for granting summary judgment." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007)(citing *O'Campo v. Hardisty*, 262 F.3d 621, 624 (9th Cir. 1958)). Moreover, any "evidence inconsistent with a Rule 36 admission is properly excluded." *999 v. C.I.T. Corp.*, 776 F.2d 866, 870 (9th Cir. 1985).

Huszar has admitted copying and distributing portions of the Movie through a BitTorrent network without Dallas's permission or consent. As such, Huszar has admitted to infringing on Dallas's rights to the Movie. Huszar argues the admission should be viewed in a light most favorable to him and as Dallas has not identified the portions of the Movie copied and distributed

---

³To the extent Huszar complains it is unfair to rely on admissions deemed admitted while he was not represented by counsel, Huszar was represented by counsel at the time the request for admissions were served, the date the admissions were originally due, and after the discovery stay was lifted. Consequently, Huszar was represented by counsel for the majority of time the request for admissions was pending. Huszar's representation in the Answer he would not participate in discovery made it clear he did not intend to respond to the request for admissions. Additionally, Huszar obtained new counsel in February 2017, who inquired about addressing the deemed admissions, but never filed a motion in light of the court's representation it would not be well taken.

PAGE 14 – FINDINGS AND RECOMMENDATIONS

by Huszar, it has not proven Huszar copied protected portions of the Movie. For example, Huszar asserts he could have copied a trailer for the Movie or the credits, not portions of the Movie itself.

Dallas identified "the entire motion picture" and "all other cinematographic material" as protected material in the copyright for the Movie. (Pl.'s Mot. Ex. 3.) Huszar has admitted the Movie contains original material protected by the Act. (Pl.'s Mot. Ex. 1 at 2.) Huzsar further admitted copying and distributing portions of the Movie. (Pl.'s Mot. Ex. 1 at 2.) The only reasonable conclusion to be derived from the evidence and admissions are that Huzsar copied and distributed portions of the Movie protected under the Act. This conclusion is further supported by the presumption that Huszar destroyed evidence favorable to Dallas, which Judge Simon found to be an appropriate sanction for Huszar's intentional act.

Huszar may not create a genuine issue of material fact with regard to this issue merely by arguing the evidence and admissions should be viewed in his favor. Rather, a party asserting a fact is genuinely disputed must cite to evidence in the record and may not rely on unsupported conjecture or conclusory statements. Once a party offers contradictory evidence, the court must then resolve any reasonable doubt about the existence of a genuine issue of material against the non-moving party. Here, Huszar does not offer any evidence establishing the portions of the Movie he copied and distributed were limited to portions of the Movie unprotected by the Act, which could have been easily accomplished with a declaration from Huszar.[4] Consequently, Huszar has failed to raise a genuine issue of material fact which should be resolved in his favor. Any reasonable fact finder

---

[4]To the extent Huszar denied he downloaded the Movie in the Answer, such denial is inconsistent with his admissions and is properly excluded.

PAGE 15 – FINDINGS AND RECOMMENDATIONS

considering the evidence currently before the court would find Huszar copied and distributed protected portions of the Movie in violation of the Act.

Huszar specifically objects to four requests for admissions as irrelevant or improper conclusions of law. Requests for admissions under Rule 36 are limited to "facts, the application of law to fact, or opinions about either." FED. R. CIV. P. 36(a)(1) (2018). "Requests for purely legal conclusions, however, are generally not permitted." *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 105 F. Supp. 3d 1184, 1195 (D. Or. 2015)(citing *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009)). A request for legal conclusion would include admissions that a curb ramp violates federal accessibility standards, a patent is valid, or an individual is a "public figure" as defined by the United States Supreme Court. *Benson*, 105 F. Supp. 3d at 1196 (compiling cases).

The four objectionable requests for admissions asked Huszar to admit he: (1) used BitTorrent to exchange files with others in violation of the Act; (2) was familiar with the use of BitTorrent for the downloading of media prior to the filing of this lawsuit; (3) willfully copied and distributed multiple copyrighted files through a public peer-to-peer network without the permission or consent of the authors; and (4) copied and distributed portions of the Movie through a BitTorrent network without Dallas's permission or consent. Huszar's use of, and familiarity with, BitTorrent for downloading media, and his copying and distribution of portions of the Movie as well as other copyrighted material, are factual admissions appropriate under Rule 36. Whether Huszar's use of BitTorrent for downloading media other than the Movie violated the Act is an improper conclusion of law and is also arguably irrelevant to the issues before the court. Additionally, the question of whether Huszar's copying and distribution of other copyrighted files was "willful" as defined by the Act could be viewed as a legal conclusion. However, the relevant factual admissions coupled with

the admitted allegations of the Complaint are sufficient to establish Huszar's copying and distribution of the Movie was willful.

"To prove 'willfulness' under the Act, which is relevant only with regard to increased statutory damages or attorney fees, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. vv. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011)(quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). *See also In re Barbosa*, 545 F.3d 702, 708 (9th Cir. 2008)(copyright infringement is willful if defendants "knew that they were infringing the [Appellee's] copyrights or that they acted with reckless disregard as to whether they were doing so.") Huszar admitted copying and distributing multiple copyrighted files without permission or consent of the owners, specifically copying and distributing the Movie without Dallas's permission or consent, and having familiarity with and using BitTorrent for exchanging files. Moreover, by failing to answer the Complaint, he admitted having notice of Dallas's rights to the Movie and allowing continued sharing of copyrighted materials through the IP Address after receiving notice of this lawsuit. (Compl. ¶¶ 11, 17.) Finally, Huszar admitted, and the court has determined, Huszar willfully and intentionally destroyed evidence relevant to Dallas's claims. This conduct clearly qualifies as reckless, if not intentional, behavior. The court finds the uncontroverted evidence establishes Huszar engaged in willful copyright infringement. In any event, Huszar is not entitled to summary judgment.

II.  Huszar's Motion for Summary Judgment

PAGE 17 – FINDINGS AND RECOMMENDATIONS

In his motion for summary judgment, Huszar offers arguments and evidence disputing Dallas's ability to enforce the copyright and the reliability of the software that identified the downloading, and arguing Huszar is an internet service provider and immune from liability. First, Huszar raised most of these issues for the first time in his motion, which was filed after briefing was completed on Dallas's motion for partial summary judgment. As the arguments and evidence were not offered or relied on in Huszar's response to Dallas's motion, they are not relevant to the court's consideration of such motion. Furthermore, most, if not all, of the evidence offered in support of Huszar's motion for summary judgment is inconsistent with his admissions and is properly excluded. For example, Huszar's admission he copied and distributed the Movie is contrary to his argument he acted solely as an internet service provider or that the evidence he downloaded the Movie is unreliable. Similarly, any evidence offered to support Huszar's argument based on Dallas's failure to offer a depository copy of the Movie is inconsistent with Huszar's admission Dallas owns the copyrights to the Movie and the Movie is entitled to copyright protection.

The court recommends granting Dallas's motion for partial summary judgment on the issue of liability and willfulness, making Huszar's subsequent arguments he is not liable moot. Additionally, the evidence offered in support of Huszar's motion for summary judgment is inconsistent with his admissions and should be excluded, leaving Huszar's motion unsupported and without merit.

*Conclusion*

Dallas's motion (ECF No. 122) for partial summary judgment seeking a determination Huszar willfully infringed on Dallas's copyright in the Movie should be GRANTED. Huszar's motion for summary judgment should be DENIED as moot.

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **March 23, 2019**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 6th day of March, 2019.

     /s/ John V. Acosta
     JOHN V. ACOSTA
     United States Magistrate Judge