WENDY LYON, OSB No.: 162408
WLyon@FoxRothschild.com
FOX ROTHSCHILD LLP
1001 4th Avenue, Suite 4500
Seattle, WA 98154
Telephone:    206-389-1667
Facsimile:    206-389-1708

LINCOLN BANDLOW – *Admitted Pro Hac Vice*
Lincoln@BandlowLaw.com
LAW OFFICES OF LINCOLN BANDLOW, PC
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone:    310-556-9680
Facsimile:    310-861-5550

*Attorneys for Plaintiff,*
*Dallas Buyers Club, LLC.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **DALLAS BUYERS CLUB, LLC**<br><br>*Plaintiff,*<br><br>v.<br><br>**JOHN HUSZAR**<br><br>*Defendant.* | Case No.:  3:15-cv-00907-AC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEFING REGARDING DEFENDANT'S SUMMARY JUDGMENT MOTION** |

3:17-cv-157-AC

Page 1

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEFING REGARDING DEFENDANT'S SUMMARY JUDGMENT MOTION

## MEMORANDUM OF POINTS AND AUTHORITIES

In his Supplemental Brief Regarding Summary Judgment ("Supplemental Brief"), Defendant John Huszar ("Defendant" or "Huszar") argues that as a result of recent Ninth Circuit precedent, *Ventura Content v. Motherless*, 885 F.3d 597 (9th Cir. 2018) ("*Ventura Content*"), Defendant's use of a Tor router means that he, as a matter of law, fits within the DMCA statutory safe harbor of 17 USC § 512(c) ("Sect. 512(c)"). That contention is incorrect.

As a starting point, Defendant did not even move for summary judgment claiming safe harbor protection under Sect. 512(c). To the contrary, Defendant sought summary judgment on the ground that he has copyright infringement immunity under Sect. 512(a) and (b), two related, but different safe harbor provisions. Dkt. No. 138. Having previously failed to move for summary judgment under Sect. 512(c), Defendant cannot now, in a sur-reply, attempt to surreptitiously expand the scope of his motion and seek summary judgment under new theories that have never before been presented.

Even if the Court decides to reach the merits of Defendant's new Sect. 512(c) argument, it is clear that neither the statute, nor the *Ventura Content* case that Defendant cites, support Defendant's argument that use of a Tor router insulates him from liability and that summary judgment should be granted in his favor. To the contrary, Sect. 512(c) lists several elements that must be established to take advantage of the statutory safe harbor from copyright infringement claims. As the Court in *Ventura Content* put it:

> [F]or a service provider to get safe harbor protection despite its infringement, it must not know of the infringement, and the infringement cannot be apparent. It must also take down or prevent access to the infringing material as soon as it learns about it or receives a DMCA

3:17-cv-157-AC

Page 2

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEFING REGARDING DEFENDANT'S SUMMARY JUDGMENT MOTION

> notice.  And it must not directly benefit financially from the infringement in situations when it can control the activity.

*Ventura Content v. Motherless*, 885 F.3d 597, 604 (9th Cir., 2018).  On top of that, the service provider must have a policy to terminate users who repeatedly engage in infringing activity.  17 USC § 512(i).  This is a fact-dependent inquiry that cannot be resolved simply by reference to the type of internet network being utilized, as Defendant suggests.

To be clear, the *Ventura Content* case did not in any way involve a Tor user.  Rather, it involved a website that allowed for the posting of user-generated content.  In that case, the plaintiff copyright holder sued that website, which hosted adult photos and videos uploaded by individual users, when it appeared clear that users were, in fact, uploading content owned by plaintiff.  Both the trial court and the Ninth Circuit found that the defendant website fit within the statutory safe harbor under Sect. 512(c).  The defendant had no actual knowledge that content infringing the plaintiff's copyrights had been posted on the defendant's website, particularly considering the defendant had not been served with DMCA takedown notices by the plaintiff.  The defendant also did not have any apparent knowledge of infringement, as the plaintiff's videos were not marked as copyrighted and were not sufficiently current and well-known for the copyright implications of sharing the videos to be objectively obvious.  *Id*. at 611 (*citing Columbia Pictures Industries, Inc. v. Fung*, 710 F. 3d 1020 (9th Cir. 2013)).  Finally, the courts found that the defendant did not benefit financially from the infringement and worked expeditiously to take down infringing material when informed.

Notably absent from this detailed, fact-specific inquiry, is *any* discussion of the type of router or network relied upon by the defendant.  This simply did not enter the Court's analysis, and its conclusion that the defendant fit within the Sect.

3:17-cv-157-AC

Page 3

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEFING REGARDING DEFENDANT'S SUMMARY JUDGMENT MOTION

512(c) safe harbor was based on other facts.

Thus, contrary to Defendant's argument in the Supplemental Brief, the *Ventura Content* case does not establish that a party's operation of a Tor router *ipso facto* entitles that party to statutory immunity under Sect. 512(c), or any other statute. In the *Ventura Content* case, the Ninth Circuit took note of the fact that the defendant was not served with a DMCA takedown notice, timely removed the content infringing the Plaintiff's copyright the same day it was pointed out, and otherwise worked expeditiously to remove infringing content.

Did Defendant Huszar get any such notices, timely remove any content or infringing users, remove any infringing content? One can never truly know because Defendant acted contrary to a court directive and intentionally deleted the hard drive and backup RAID drive of the only computer known to have accessed the IP address at issue in this case, leading to a separate discovery sanction against him. DKt No. 95. Defendant now seeks to use his own spoliation as a shield and argues that because he used a Tor router, it is impossible to determine who is liable for the infringement and Defendant automatically qualifies for a DMCA safe-harbor. However, this position is not supported by any case-law, including the *Ventura Content* case that Defendant misconstrues, and is directly contrary to Defendant's own discovery conduct, including deleting a computer hard drive he had been ordered to turn over.

Defendant's reliance on *Ventura Content* and his alleged operation of a Tor site is a red herring. Defendant destroyed his hard drive and backup drive, but now wants to be protected from his alleged infringing acts by his assertion that he used Tor, the "safe haven for criminal activity, especially child pornography."[1] He

---

[1] *See The Tor Network: A Global Inquiry into the Legal Status of Anonymity Networks*, 11 Wash. U. Global Stud. L. Rev. 715, 723 (2012) ("*Tor Network Inquiry*").

3:17-cv-157-AC

Page 4

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEFING REGARDING DEFENDANT'S SUMMARY JUDGMENT MOTION

seeks a safe harbor for his acts, but it has been noted that the use of Tor may violate Section 512(i) of the DMCA which mandates that all networks seeking DMCA immunity must not interfere with "standard technical measures" which are described as "technical measures that are used by copyright owners to identify or protect copyrighted works." 17 U.S.C. § 512(i)(2). Thus, "*[b]ecause the DMCA was not intended to cover and did not anticipate anonymity networks like Tor, it seems unlikely that a court would apply its provisions to Tor.*" *Tor Network Inquiry* at 725; *see also*, *An Onion a Day Keeps the NSA Away*, 13 No. 11 J. Internet L. 22, 25-26 (2010) (noting many arguments "that could be used to argue that anonymity networks [such as Tor] do interfere with standard technical measures and, therefore, are not deserving of [DMCA] safe harbor protections" such as, for example, the fact that Tor "frustrates the copyright holder's ability to discover a file's true internet location" interfering with the "identification" of the file where the infringing material is stored and thus "Tor interferes with § 512(i)'s standard technical measures to identify copyrighted works and therefore is undeserving of DMCA safe harbor protection.")

The Court should ignore Defendant's incorrect arguments in the Supplemental Brief and deny his motion for summary judgment.

June 20, 2019

LINCOLN BANDLOW – *Admitted Pro Hac Vice*
lincoln@bandlowlaw.com
LAW OFFICES OF LINCOLN BANDLOW, P.C.
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: 310-556-9680 / Facsimile: 310-861-0555

WENDY LYON, OSB No.: 162408
WLyon@FoxRothschild.com
FOX ROTHSCHILD LLP
1001 4th Avenue, Suite 4500
Seattle, WA 98154
Telephone: 206-389-1667 / Facsimile: 206-389-1708

3:17-cv-157-AC

Page 5

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEFING REGARDING DEFENDANT'S SUMMARY JUDGMENT MOTION