UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DALLAS BUYERS CLUB, LLC,                          Case No. 3:15-CV-00907-AC

                    Plaintiff,                                    FINDINGS AND
                                                                  RECOMMENDATION
          v.

JOHN HUSZAR,

                    Defendant.
_____

ACOSTA, Magistrate Judge:

*Introduction*

       In this lawsuit, plaintiff Dallas Buyer's Club, LLC ("Dallas"), alleges defendant John Huszar

("Huszar") engaged in copyright infringement in violation of the Copyright Act (17 U.S.C. §§ 101-

1332) (the "Act").   Dallas seeks both a permanent injunction against Huszar and an award of

statutory damages, plus attorney fees and costs.   Currently before the court on remand is Dallas's

motion for partial summary judgment with regard to willful infringement and Huszar's motion for

summary judgment on all claims.

PAGE 1 – FINDINGS AND RECOMMENDATIONS

The court finds Dallas's motion for partial summary judgment was effectively resolved by Judge Simon's withdrawal of the order deeming the facts sought in Dallas's requests for admissions admitted due to Huszar's failure to respond to such requests.  Accordingly, Dallas's motion for partial summary judgment should be denied.

With regard to Huszar's motion for summary judgment, the court finds Huszar failed to establish he is entitled to immunity as an internet service provider; Dallas was not required to produce the "depository copy" of the copyrighted material; and the reliability of the monitoring software used by Dallas remains at issue.  Consequently, Huszar's motion for summary judgment should also be denied.[1]

*Preliminary Procedural Matters*

Prior to Huszar filing his motion for summary judgment, the parties completed briefing on Dallas's motion for partial summary judgment with regard to the issues of liability and willfulness based solely on the pleadings and admitted facts.  In a Findings and Recommendation dated March 6, 2019 ("F&R III"), this court found the admissions resulting from Huszar's failure to deny allegations in the operative complaint or respond to requests for admissions,[2] and his intentional destruction of evidence relevant to Dallas's claims, clearly established Huszar willfully infringed on Dallas's copyrighted material in violation of the Act.  *Dallas Buyers Club, LLC v. Huszar*, Case No 3:15-CV-00907-AC, 2019 WL 2070421, at *8 (D. Or. March 6, 2019).  Huszar filed objections to

---

[1]Huszar requested oral argument in his motion for summary judgment and his reply to that motion.  The court finds this motion appropriate for disposition without oral argument, pursuant to LR 7-1(d)(1), and denies the request.

[2]In an order dated October 11, 2016, the court deemed Dallas's request for admissions "fully admitted based on the lack of any response by Defendant Huszar."  (Order dated October 11, 2016, ECF No. 84.)

PAGE 2 – FINDINGS AND RECOMMENDATIONS

F&R III, arguing for the first time the requests for admissions were served on Integrity Computer Services ("Integrity") only and not Huszar, who was not substituted as defendant for Integrity until July 7, 2016, nearly three months after the requests for admissions were issued. Judge Simon agreed with Huszar and withdrew the deemed admission of any facts sought in the requests for admissions. (Order dated May 7, 2019, ECF No. 162, at 3.) He then declined to adopt F&R III and remanded the case to this court for consideration of Dallas's motion for partial summary judgment and Huszar's motion for summary judgment.

Dallas's motion for partial summary judgment was "based on facts admitted and pleadings as to liability and willfulness." (Pl.'s Mot. for Partial Summ. J., ECF No. 122, at 3.) In support of its motion, Dallas offered only its request for admissions, Huszar's answer to the Second Amended Complaint ("Answer"), and the Certificate of Registration issued on November 13, 2013, by the United States Copyright Office identifying Dallas as the "author" of the motion picture entitled *Dallas Buyers Club*, the copyrighted material at issue in this case (the "Movie"). In his opposition briefing, Huszar argued the admitted facts and pleadings did not establish Dallas owned a protected interest in the Movie or that Huszar willfully infringed on such interest. Huszar claimed the Answer should be viewed as a general denial and not an admission of any facts, existing case law from Australia and Texas refuted Dallas's asserted interest in the Movie, and the facts deemed admitted did not prove willfulness in light of the presence of a Tor exit node and open Wi-Fi. In response, Dallas continued to rely solely on the admissions, arguing Huszar's efforts to raise disputed issues of fact were unavailing.

It is evident Dallas's motion was reliant on Huszar's admissions. Judge Simon's withdrawal of the deemed admissions based on Huszar's failure to respond to Dallas's requests for admissions

PAGE 3 – FINDINGS AND RECOMMENDATIONS

was fatal to Dallas's motion.  Accordingly, Judge Simon's ruling effectively denied Dallas's motion for partial summary judgment, leaving nothing left for this court to consider on remand.  This court recommends Dallas's motion for partial summary judgment be denied, leaving only Huszar's motion for summary judgment subject to consideration on remand.

*Background*

Dallas filed this lawsuit on May 27, 2015, against a "Doe" defendant, identified only by a specific Internet Protocol address (the "IP Address") allegedly used to download the Movie.[3]  Shortly thereafter, this court granted Dallas's *ex parte* motion to expedite discovery to determine the identity of the account holder assigned the IP Address.  Comcast offered Integrity, a corporate entity, as the subscriber associated with the IP Address.  Dallas attempted to contact Integrity by sending several letters, which were eventually returned as undeliverable.  In early August 2015, Dallas identified Huszar as the registered agent for Integrity.  Thereafter, Dallas attempted to communicate with Huszar, rather than with Integrity.

On October 7, 2015, Dallas filed its First Amended Complaint identifying Integrity as the defendant and successfully served Integrity on October 14, 2015.  Integrity moved to dismiss the First Amended Complaint two weeks later.  In light of Dallas's expressed intent to amend its complaint a second time, the court denied Integrity's motion to dismiss on December 18, 2015. Dallas moved to file a second amended complaint on February 26, 2016.

In a Findings and Recommendation dated April 29, 2016 ("F&R I"), the court recommended granting Dallas's motion to amend its complaint to substitute Huszar as defendant with regard to

---

[3]To the extent the court relies on general background information summarized in prior Findings and Recommendations, citations to the record found therein are not repeated here.

claims for direct and indirect copyright infringement, and to add facts purporting to show spoliation, but denying Dallas's motion to assert a claim for failure to register. *Dallas Buyers, LLC v. Integrity Computer Servs.*, Civ No. 3:15-cv-00907-AC, 2016 WL 3085907 (D. Or. April 29, 2016). Judge Simon adopted F&R I in its entirety on May 31, 2016. *Dallas Buyers, LLC v. Integrity Computer Servs.*, Civ No. 3:15-cv-00907-AC, 2016 WL 3085899 (D. Or. May 31, 2016).

Dallas filed its Second Amended Complaint, identifying Huszar as the defendant on July 7, 2016 (the "Complaint"). In the Complaint, Dallas alleged it is the registered copyright holder of the Movie. (Second Am. Compl., ECF No. 63 ("Compl.") ¶¶ 5-7.) Dallas claimed Huszar, as sole shareholder of the now dissolved Integrity and currently under the assumed business of Designer Visuals, is responsible for the IP Address observed to infringe the Movie, as well as a number of other copyrighted titles. (Compl. ¶¶ 12, 14-16.) Dallas asserted Huszar willfully, intentionally, and in disregard of Dallas's rights, copied and distributed the Movie through a public BitTorrent network, or permitted, facilitated and promoted the use of the internet to download and share the Movie. (Compl. ¶¶ 20-22, 30-35.) Moreover, the Complaint alleged Huszar "willfully and intentionally deleted the contents of the single computer" with access to the IP Address used to infringe the Movie, even after receiving notice of this lawsuit. (Compl. ¶¶ 18-19.)

On August 19, 2016, Huszar, who was then appearing *pro se*, filed the Answer, which was captioned as a letter to "To Whom It May Concern." In the Answer, Huszar informed the court of his poor health, the effect of the litigation on his heart condition, and matters related to mediation. (Answer, ECF No. 71, at 1-4.) He denied downloading the Movie and intentionally destroying evidence, and explained he operated his "Wifi Access Point" in an "unsecured manner," operated a Tor exit node, and had many roommates and guests to whom he provided the password for his

PAGE 5 – FINDINGS AND RECOMMENDATIONS

"Wifi Access Point." (Answer at 3, 5-6.) Huszar represented he "will not participate in this case any longer," which expressly included "any further discovery, additional depositions, and conference calls," and was "certainly NOT going to participate in a jury trial." (Answer at 4.) On September 3, 2016, Dallas moved to strike the Answer and for sanctions based on Huszar's spoliation of evidence ("Motion to Strike").

On December 28, 2016, the court issued a Findings and Recommendation addressing the Motion to Strike ("F&R II") and recommending the request to strike the Answer in its entirety be denied. *Dallas Buyers, LLC v. Huszar*, Case No. 3:15-cv-00907-AC, 2016 WL 11187248, at *3 (D. Or. Dec. 28, 2016). The court found Huszar's emphatic and unambiguous denial he downloaded the Movie satisfied the requirements of an Answer and were proper, but recommended the motion to strike matters related to Huszar's health and court-ordered mediation be granted. *Id.* at*4. With regard to Dallas's request for sanctions based on spoliation of evidence, the court found Huszar destroyed relevant evidence two months after receiving notice of the pending lawsuit, which created an obligation to preserve the evidence, acted with the intent necessary to support sanctions, and such spoliation prejudiced Dallas's ability to identify the actual infringer. *Id.* at *4-*6. The court then weighed the relevant factors and recommended imposing the severe sanction of entry of default, finding lesser sanctions would not adequately remedy the extreme prejudice suffered by Dallas as a result of Huszar's actions. *Id.* at *6 -*8.

In an opinion filed February 6, 2017, Judge Simon adopted F&R II in part. *Dallas Buyers, LLC v. Huszar*, Case No. 3:15-cv-00907-AC, 2017 WL 481469 (D. Or. Feb. 6, 2017). He agreed the Answer contained denials of allegations in the Complaint and was a proper answer, the allegations related to Huszar's medical issues and mediation should be stricken, and Huszar

intentionally destroyed relevant evidence while under an obligation to preserve it. *Id*. However, Judge Simon found the sanction of entry of default too severe and determined an adverse jury instruction was warranted. *Id*. at \*4-\*5. Specifically, Judge Simon ordered any jury considering the merits of this lawsuit be instructed: "Defendant John Huszar has failed to preserve computer hard drives that may have contained evidence relevant to this case. You may presume that the lost evidence was favorable to Plaintiff. Whether this finding is important to you in reaching a verdict in this case is for you to decide." *Id*. at \*5.

Huszar filed a motion for summary judgment asserting Huszar acted as an internet service provider and was entitled to absolute immunity under 17 U.S.C. §§ 512(a) and (b), Dallas failed to produce a true and correct depository copy of the Movie, and the monitoring software used by Dallas was unreliable. This is the motion currently before the court on remand from Judge Simon.

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2019). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

PAGE 7 – FINDINGS AND RECOMMENDATIONS

Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2019). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

Dallas alleges claims for direct and indirect copyright infringement against Huszar in the Complaint. In his motion for summary judgment, Huszar argues he is an internet service provider and immune from liability; Dallas did not provide depository copy of the Movie during discovery and is, therefore, unable to prove infringement; and the software that identified the alleged downloading of the Movie is unreliable and inadmissible.

PAGE 8 – FINDINGS AND RECOMMENDATIONS

I.  Immunity

In his motion for summary judgment, Huszar contends he is entitled to the immunity afforded internet service providers by the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA") found at 17 U.S.C. § 512(a) and (b).[4]  Huszar claims he provided a "Tor exit node" through which others engaged in the alleged infringing activity via the IP Address and compares himself to Comcast, AT&T, UPS, FedEx, and the Post Office in the context of a conduit for delivering a copy of an item, here the Movie, to an end user.  Huszar describes the "Tor" network as "an open source software that allows a person to configure their computer to serve as an 'exit point' for internet browsing for any other computer on the internet" and offers two technical journal articles generally discussing Tor networks and Tor nodes in support of his claim of immunity. (Def.'s Mot. for Summ. J., ECF No. 138 (Def.'s Mot."), at 7.)  Huszar notes Dallas "has made no allegations, nor produced any evidence, that would support it claims that Huszar did anything besides run an ISP."  (Def.'s Mot. at 8.)  Furthermore, Huszar concedes no federal court has found the provider of a Tor exit node entitled to the statutory immunity provided by 17 U.S.C. § 512.  In its opposition briefing, Dallas relies primarily on the previously  deemed admissions but also argues Huszar has failed to show he meets the requirements necessary to qualify for immunity offered by the DMCA.[5]

_____

[4]Additionally, Huszar appears to assert for the first time in his supplemental briefing he is also protected by 17 U.S.C. § 512(c).  The court allowed the parties to file supplemental briefs to update their original arguments in light of recent opinions.  Huszar's claim he is entitled to protection under 17 U.S.C. § 512(c) exceeds his original arguments and is not properly before the court.  In any event, Huszar has failed to establish he is eligible to rely on any safe harbor provision of 17 U.S.C. 512.

[5]Dallas also contends Huszar failed to allege immunity as a defense in his answer or during discovery and, therefore, waived this defense.  Assuming statutory immunity under the DMCA is

Title II of the DMCA, known as the Online Copyright Infringement Liability Limitation Act and found at 17 U.S.C. § 512, limits the liability of service providers for claims of copyright infringement. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). The four "safe harbors provide protection from liability for: (1) transitory digital network communications; (2) system caching; (3) information residing on systems or networks at the direction of users; and (4) information location tools." *Id.* at 1076-77; 17 U.S.C. §§ 512(a)-(d) (2019). The Ninth Circuit has held a service provider must meet the conditions set forth in 17 U.S.C. § 512(i) to be eligible for protection under any of the safe harbor provisions. *Id.* at 1076.

17 U.S.C. 512(i)(1), entitled "**Conditions for eligibility**" provides:

> The limitations on liability established by this section shall apply to a service provider only if the service provider –
>
>> (A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and
>>
>> (B) accommodates and does not interfere with standard technical measures.

"Section 512(i)(1)(A) requires service providers to: (1) adopt a policy that provides for the termination of service access for repeat copyright infringers in appropriate circumstances; (2) implement that policy in a reasonable manner; and (3) inform its subscribers of the policy." *Ellison*,

---

an affirmative defense generally forfeited if not asserted in an initial pleading, the Ninth Circuit has held "[i]n the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment." *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993); *see also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)("A defendant may thus raise an affirmative defense for the first time in a motion for judgment on the pleadings, but 'only if the delay does not prejudice the plaintiff.'"). Dallas does not argue it has been prejudiced by Huszar's delay in asserting his immunity and has had adequate opportunity to respond to such defense in its opposition briefing.

357 F.3d at 1080.  A "service provider 'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007)(citations omitted).

Additionally, each of the safe harbors require a service provider to comply with specified conditions.   For example, a service provider qualifies for the transitory digital network communication limitation found in 17 U.S.C. § 512(a) only if "no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections."  17 U.S.C. § 512(a)(4).  Similarly, the safe harbor for system caching is available only if the alleged infringing "material is made available online by a person other than the service provider" and if such person "has in effect a condition that a person must meet prior to having access to the material, such as a condition based on payment of a fee or a provision of a password or other information, the service provider permits access to the stored material in significant part only to users of its system or network that have met those conditions and only in accordance with those conditions." 17 U.S.C. §§ 512(b)(1)(A), 512(b)(2)(D).

A party moving for summary judgment on an affirmative defense, such as a service provider asserting a right to a safe harbor limitation under the DMCA, "must establish 'beyond controversy every essential element,' and failure to do so will render [the service provider] ineligible for the . . . safe harbor's protection." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1052 (9th

PAGE 11 – FINDINGS AND RECOMMENDATIONS

Cir. 2017)(citing *S. Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1013 (9th Cir. 2013). Huszar has not argued, or offered evidence, he met any of the specific eligibility requirements or conditions delineated in 17 U.S.C. § 512. Rather, Huszar merely asserts his installation of a Tor program makes him a service provider entitled to protection under the safe harbor provisions of the DMCA. Huszar has failed to meet his burden to prove he is generally eligible for protection under 17 U.S.C. § 512(i), or has met all of the conditions necessary to enjoy the protection of 17 U.S.C. § 512(a)-(d).

## II.  Depository Copy

To establish a claim for direct copyright infringement, the plaintiff "must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." *Ellison*, 357 F.3d at 1076 (9th Cir. 2004). In other words, a plaintiff must establish: "(1) ownership of a valid copyright and (2) copying by the defendant of protectable elements of the work." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999). For the purposes of his summary judgment motion, Huszar does not dispute Dallas owns a valid copyright interest in the Movie. Rather, Huszar argues Dallas's refusal to produce the "depository copy" of the Movie before the close of discovery precludes Dallas from proving Huszar copied a protected portion of the Movie.

Huszar's argument is predicated on Dallas's obligation to produce the depository copy of the Movie during discovery. The Federal Rules of Civil Procedure allows a party to seek production of documents that are "in the responding party's possession, custody, or control." FED. R. CIV. P. 26(a)(1)(A)(ii), 34(a)(1) (2019). Dallas does not have possession or custody of the depository copy of the Movie, which was  necessarily submitted to the United States Copyright Office (the "Office")

with the copyright registration.   Moreover, Dallas's control over the depository copy is not any greater than Huszar's, as both are able to request the depository copy, or a copy thereof, from the Office.  *See Mercer Publ'g Inc. v. Smart Cookie Ink*, LLC, Case No. C12-0188JLR, 2012 WL 12863933, at *1 (W.D. Wash. Nov. 27, 2012)("Deposit copies are available to litigating parties on request from the Copyright Office.)   Where both parties have the ability to secure copies of the requested evidence from a third-party custodian, the obligation to produce the document to the other party does not exist.  *Nosal v. Granite Park LLC*, 269 F.R.D. 284, 290 (S.D.N.Y. 2010) (party need not provide documents from third parties if compulsory process against those parties is available to party seeking documents);  *Estate of Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991) ("Additionally, the Defendant can secure copies of the requested documents from the custodian records at the New York Post as readily as the Plaintiff by following Fed. R. Civ. P. 30 and 45.") Consequently, Dallas's failure to provide a depository copy of the Movie to Huszar during the discovery period was not a violation of federal discovery rules and would not prevent Dallas from offering a depository copy of the Movie at trial.[6]

## III.  Unreliable Software

Finally, Huszar offers expert evidence MaverickMonitor, the software used by Dallas to monitor the IP Address and identify possible infringing activities (the "Software"), is not sufficiently reliable to be admissible.  Huszar's expert, Kalman C. Toth, Ph.D., P. Eng., prepared a "Third Expert

---

[6]Huszar also argues Dallas must "produce a copy of the work that is the subject of the registration certificate" to prove infringement, and appears to assert only the "depository copy" will satisfy this element.  The individual filing the copyright application would have personal knowledge of the content of the version  of the Movie forwarded to the Copyright Office and could testify with regard to the authenticity of a copy or version of the Movie offered at trial.

Report: Assessment of MaverickMonitor Software Reliability" dated February 27, 2018 (the "Toth Report"), in which he commented on the absence of effective or adequate testing of the Software, noted the reliability of the Software could not be assessed without objective evidence, and concluded: "In the absence of verifiable evidence, an objective software professional cannot conclude that MaverickMonitor detects the IP addresses of infringing BitTorrent users correctly, considerably, and reliably." (Rockenstein Decl. dated February 28, 2018, ECF No. 138-10 ("Rockenstein Decl."), Ex. 1.)

In addition to the Toth Report, Huszar offers the following reports authored by Toth: (1) "Expert Report Re. Malibu LLC vs. John Doe" dated December 14, 2016; a rebuttal report dated December 28, 2016; and a response to a supplemental report dated January 10, 2017, prepared with regard to a copyright infringement case filed by Malibu Media in California and addressing the reliability of a software-based system identified as "Excipio's system;" (2) "Expert Report of Kal Toth Concerning Technical Report to Maverickeye" dated May 10, 2017, prepared with regard to a copyright infringement case initiated by Clear Skies in Illinois and addressing the reliability of a software identified as "Excipio's system"; and a "Second Expert Report of Kal Toth Concerning the Maverick Eye Case" dated December 24, 2017, addressing the reliability of a software identified as "IPTracker" (collectively "Other Toth Reports").[7]    (Rockenstein Decl. Exs. 2-6.)    Toth also references various depositions, declarations, and reports prepared with regard to the *Malibu* and *Clear Skies* litigation which he reviewed in preparing the Toth Report, none of which are attached to the Toth Report but some of which are attachments or exhibits to the Other Toth Reports.

---

[7]Nowhere in the more than 450-pages of the Other Toth Reports does Toth mention the Software or Dallas. However, in the Toth Report, Toth represents the Software "is also known as IPTracker (IPP Interntaional) and NARS (Excipio)." (Rockenstein Decl. Ex. 1 at 1.)

(Rockenstein Decl. Ex. 1 at 1.) After a review of all of the materials offered by Huszar, it appears he failed to provide copies of the expert report of Benjamin Perino dated November 23, 2017, the declaration of Tobias Fieser filed August 16, 2011, the expert witness report of Dr. Simone Richter dated April 2, 2014, or the expert report of Robert D. Young dated February 11, 2015, all of which were referenced and rejected in the Toth Report.

In response to the Toth Report, Dallas offered the expert report of Stephen M. Bunting, EnCE, CCFT, dated February 2, 2018, and prepared with regard to copyright litigation initiated by Voltage Pictures LLC addressing the reliability of infringement detection software by MaverickEye (the "Bunting Report"). (Mansfield Decl. dated April 9, 2018, ECF No. 145 ("Mansfield Decl.") Ex. 1.) Bunting tested the Software[8] with the cooperation of Benjamin Perino, the CEO and developer at the company that owns the Software ("Perino"), and concluded the "infringement detection software works and accurately identifies the IP address of the device responsible for sharing of a particular file on the bit torrent network and the exact time of the violation." (Mansfield Decl. Ex. 1 ¶¶ 17, 36.) Bunting reviewed the specifications of the software described in Perino's expert report and, as a result, considered it more reliable than software he used in his law enforcement capacity because the Software captures and retains network packets, stores evidence, runs on an ISO/IEC 270001:201 compliant datacenter, and complies with PCI security specifications. (Mansfield Decl. Ex. 1 ¶¶ 18, 19.) The Bunting Report references and agrees with an expert report prepared by Perino, but does not provide a copy of such report.

---

[8]There does not appear to be any dispute the MaverickEye software tested by Bunting was the Software at issue in this case.

Huszar moves to strike the Bunting Report, arguing it lacks foundation because it relies on a document not included with the report, was authored to support a case other than the one at hand, and is based on evidence not produced in discovery. Huszar also asserts the Bunting Report relies on hearsay and is not based on personal knowledge.

Both the Toth Report and the Bunting Report refer to an expert report prepared by Perino but the parties fail to provide a copy of such report. It is very likely Toth and Bunting refer to the same Perino expert report and that Huszar had access to the report, eliminating any prejudice caused by Bunting's failure to attach the Perino expert report to the Bunting Report. Moreover, to the extent the failure to provide a copy of a document relied on establishes a lack of foundation, both reports arguably should be stricken.

Huszar contends the Bunting Report, which was prepared for use in a different case, is inadmissible in this case. The Toth Report, while arguably prepared for this case, relies on numerous expert reports, depositions, and declarations prepared for use in a variety of different cases. Again, to the extent the parties rely on information created for use in other cases establishes a lack of foundation, both reports should be stricken. Provided the parties establish their proffered expert reports evaluate the Software, their respective reports could be deemed admissible at trial despite evidence they were created, or relied on expert reports created, for use in other cases.

Huszar represents he sought production of "a copy of the source code, documentation, test data, etc. that was used to validate and verify Huszar's IP address." (Def.'s Reply in Support of Def.'s Mot. for Summ. J., ECF No. 146 ("Def.'s Reply"), at 7.) He then argues Dallas's failure to produce Bunting's test data prior to the close of discovery bars Dallas's use of the Bunting Report. The discovery deadline was January 12, 2018, but the Bunting Report was not produced until

February 2, 2018. It is possible the test data did not exist or that Dallas was not aware of the test data prior to the close of discovery in this case. Also, the requested production was limited to information related to the validation and verification of Huszar's IP address, not the reliability of the Software in general, and reasonably did not include Bunting's test data. Finally, any prejudice suffered by Huszar from the delay of the production of the test date and the Bunting Report may be alleviated prior to trial and does not justify a finding the Bunting Report is inadmissible.

Huszar also objects to Bunting's reliance on Perino's expert report, noting a Washington court found Perino does not have the qualifications necessary to be considered an expert on the issue of surveillance software.[9] In his report, Bunting refers to Perino's description of the Software which is rationally based on his understanding and perception of the Software and admissible lay witness testimony under Rule 701 of the Federal Rules of Evidence. Similarly, Bunting describes the information provided to him by Perino with regard to the testing of the Software. This information is data recovered by Perino using the Software and does not require he qualify as an expert. Finally, Bunting concurs in Perino's conclusions, but offers his own analysis and justification for his opinion. Bunting did not rely on Perino's expertise in the area of surveillance software. Consequently, the Washington court's disqualification of Perino to testify on the accuracy of the Software is irrelevant.

Furthermore, the determination that a witness has sufficient expertise to testify as an expert depends on the facts of the particular case, the questions before the witness, and the witness's specific qualifications. *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those

---

[9]Huszar offers a minute order entered on January 8, 2017, in what appear to be a number of related cases in the Western District of Washington, with the lead case identified as *Venice PI, LLC v. O'Leary*, C-17-0988 (W.D. Wa. 2017).

PAGE 17 – FINDINGS AND RECOMMENDATIONS

qualifications provide a foundation for a witness to answer a specific question.")  Accordingly, the qualification of a witness as an expert must be made on a case-by-case basis and the ruling by the Washington court does not control the qualification of Perino to testify as an expert on the specific facts and issues in this case.[10]

Bunting relied on test results provided him by Perino in reaching the conclusions set forth in the Bunting Report.  In this regard, Perino only made Bunting aware of facts or data on which an expert would reasonably rely in forming an opinion with regard to the reliability of the Software. Even assuming the provision of facts or data would be considered hearsay, the admissibility of the information Perino provided does not effect the admissibility of the Bunting Report.  *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001)("[E]xperts are entitled to rely on hearsay in forming their opinons."); FED. R. EVID. 703 (2019)("An expert may base an opinion on facts or data in the case that the expert has been made aware of or has personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or date in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.")

Finally, Huszar argues Bunting did not offer a computation of the false positive rate of the Software and, as a result, may not offer an opinion on such rate.  Bunting conducted a test in which the Software correctly identified the IP address of a device sharing a particular file on the bit torrent network.  This test did not result in any false positives or a false positive rate.  Based on this test, Bunting's knowledge of surveillance software and his independent analyses of Perino's conclusions regarding possible false positive results, Bunting concurred in Perino's statements regard the

---

[10]In the absence of a copy of the expert report referred to by Toth and Bunting or the report before the Washington court, it is impossible to identify the specific issues and facts addressed by Perino and compare them to the issues before the Washington court.

possibility of the Software yielding a false positive.  Bunting did not adopt Perino's conclusions, but rather relied on his own testing and knowledge.  Bunting arguably has the requisite personal knowledge to support his opinion on the false positive rate.

Even assuming the Bunting Report is inadmissible, the Toth Report does not necessarily prevent Dallas from creating a genuine issue of material fact with regard to proof of Huszar's infringement.  Huszar asserts the court should not admit data created and obtained by the Software, which he describes as "an untested and unverified computer system."  (Def.'s Mot. at 12.)  Huszar argues that even if the Software was correct fifty percent of the time, no one knows whether it worked when identifying the IP Address as infringing on the Movie.  This may well be true assuming the Software was the only possible evidence of infringement in similar copyright infringement cases.  However, in most cases, Dallas would have the opportunity to inspect the computer accessing an IP address for evidence of infringement, such as the portions of the Movie copied on the IP address.[11]

Here, unfortunately, Huszar wilfully and intentionally destroyed the only computer with access to the IP Address, depriving Dallas of the ability to obtain this additional evidence of infringement.  As a result, Judge Simon ordered the trial court to inform the jury that Huszar "failed to preserve computer hard drives that may have contained evidence in this case" and instruct them "you may presume that the lost evidence was favorable to [Dallas]."  *Dallas Buyers*, 2017 WL 481469, at *5.  In light of this instruction, the jury could presume Huszar destroyed portions of the Movie captured on his computer and find he infringed on the Movie despite evidence the Software was not entirely reliable.

---

[11]In his report, Bunting noted investigative software could detect images placed on a computer via a peer-to-peer software.  (Mansfield Decl. Ex. 1 ¶ 14.)

In light of the genuine issue of material fact created by the opposing expert reports and, alternatively, the presumption any evidence found on Huszar's computer would have been beneficial to Dallas, summary judgment based on the reliability, or lack thereof, of the Software is not appropriate. Huszar's motion to strike the Bunting Report at this stage of the proceedings and related motion for summary judgment on the issue of infringement should be denied.

### Conclusion

Dallas's motion (ECF No. 122) for partial summary judgment seeking a determination Huszar willfully infringed on Dallas's copyright in the Movie should be DENIED. Huszar's motion (ECF No. 138) to strike the Bunting Report and for summary judgment should be DENIED as well.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **September 20, 2019**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 3rd day of September, 2019.

 /s/ John V. Acosta

JOHN V. ACOSTA
United States Magistrate Judge

PAGE 20 – FINDINGS AND RECOMMENDATIONS